███████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SK NEXILIS CO., <br><br> Plaintiff, <br><br> v. <br><br> SOLUS ADVANCED MATERIALS CO., LTD., VOLTA ENERGY SOLUTIONS S.A.R.L., VOLTA ENERGY SOLUTIONS EUROPE KFT., VOLTA ENERGY SOLUTIONS HUNGARY KFT., and VOLTA ENERGY SOLUTIONS CANADA INC. <br><br> Defendants. | Civil Action No. 2:23-cv-00539-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**VOLTA'S MOTION FOR SUMMARY JUDGMENT
THAT THE '541 AND '090 PATENTS ARE DIRECTED TO
UNPATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101, *ALICE* STEP ONE**

████████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

TABLE OF EXHIBITS ................................................................................................................. v

TABLE OF ABBREVIATIONS .................................................................................................. v

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUE................................................................................................ 1

III.  GOVERNING LAW........................................................................................................ 1

    A.  Summary Judgment ............................................................................................. 1

    B.  Patent Eligibility Under 35 U.S.C. § 101................................................................. 1

IV.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................. 2

    A.  The '541 Patent .................................................................................................... 2

    B.  The '090 Patent..................................................................................................... 4

V.  ARGUMENT................................................................................................................... 5

    A.  The '541 Patent's Claims Recite Patent-Ineligible Subject Matter ....................... 5

        1.  *Alice* Step One: Independent Claim 1 Is Directed to an Abstract Idea—Eliminating Wrinkles............................................................. 5

            a.  Independent Claim 1 Is Directed to Eliminating Wrinkles.................................................................................. 6

            b.  Eliminating Wrinkles Is an Abstract Idea...................................... 7

        2.  The Dependent Claims Are Also Directed to the Abstract Idea of Eliminating Wrinkles...................................................................... 9

    B.  The '090 Patent's Claims Are Directed to Unpatentable Subject Matter ..................................................................................................... 10

        1.  *Alice* Step One: Independent Claim 1 is Directed to Unpatentable Subject Matter—Measurement of a Natural Phenomenon........................................................................................... 10

            a.  Independent Claim 1 Is Directed to Observing Rpc .................... 10

i

████████████████████████████

b.     Rpc Is a Known Measure for Observation of a Natural Phenomenon......................................................................... 11

2.     The Dependent Claims Are Also Directed to Measurement of a Natural Phenomenon............................................................ 13

VI.    CONCLUSION............................................................................................................. 14

███████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................................2, 6, 8, 9

*Alice Corp. Pty. v. CLS Bank International,*
  573 U.S. 208 (2014) ............................................................................................ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
  967 F.3d 1285 (Fed. Cir. 2020).......................................................................................12

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014)..........................................................................................1

*CareDx, Inc. v. Natera, Inc.,*
  40 F.4th 1371 (Fed. Cir. 2022) .............................................................................10, 11, 13

*Chamberlain Grp. v. Techtronic Indus. Co.,*
  935 F.3d 1341 (Fed. Cir. 2019)..........................................................................................8

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019).....................................................................................7, 8, 9

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................2

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016).......................................................................................12

*Finjan Inc. v. Blue Coat Sys., Inc.,*
  879 F.3d 1299 (Fed. Cir. 2018)..........................................................................................6

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.,*
  No. 2:17-CV-662-JRG-RSP, 2019 WL 13077855 (E.D. Tex. Apr. 18, 2019)..........................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)...........................................................................................................13

*Parker v. Flook,*
  437 U.S. 584 (1978)............................................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.,*
  No. 2:16-CV-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ............................2

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..........................................................................................2, 9

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)..............................................................................................6

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 609 (Fed. Cir. 2016)................................................................................................8

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2011) .............................................................................................6, 8

**Statutes**

35 U.S.C. § 101...................................................................................................................1, 6, 10

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................1

iv

**TABLE OF EXHIBITS**

| # | Description |
|---|-------------|
| 1 | U.S. Patent No. 9,457,541 |
| 2 | '541 Patent Prosecution History (SKN-0001767) (excerpts) |
| 3 | U.S. Patent No. 10,480,090 |
| 4 | '090 Patent Prosecution History (SKN-0002385) (excerpts) |
| 5 | Mahr M300 Instruction Manual (SKN-0006850) (excerpts) |
| 6 | Mahr Operating Manual (SKN-0008769) (excerpts) |
| 7 | Opening Expert Report for Dr. Craig Arnold (Corrected) (July 10, 2025) (excerpts) |
| 8 | Rebuttal Expert Report of Dr. Quinn Horn (July 28, 2025) (excerpts) |
| 9 | Rough Deposition Transcript of Dr. Quinn Horn (August 7, 2025) (excerpts) |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|--------------|-------------|
| Asserted Claims | Claims 1-4 of the '541 patent and claims 1-6 of the '090 patent |
| SKN | SK Nexilis Co., Ltd. |
| SUMF | Statement of Undisputed Material Facts |
| '541 patent | U.S. Patent No. 9,457,541 |
| '090 patent | U.S. Patent No. 10,480,090 |

*All emphasis herein is added, unless otherwise noted.

## I.    INTRODUCTION

The asserted claims of the '541 and '090 patents are directed to unpatentable subject matter.  In particular, the asserted claims of the '541 patent are focused on the abstract idea that wrinkles should be eliminated from copper foils.  The asserted claims of the '090 patent are focused on detecting natural phenomena, namely the roughness of the surface of copper foils, using known measurement techniques.  As such, the Court should grant summary judgment that the asserted claims of the '541 and '090 patents are directed to unpatentable subject matter under 35 U.S.C. § 101 and the framework set forth in *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208, 216 (2014).

## II.    STATEMENT OF ISSUE

Whether the asserted claims of the '541 and '090 patents are directed to unpatentable abstract ideas or natural phenomena under step one of the *Alice* framework.

## III.    GOVERNING LAW

### A.    Summary Judgment

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.    Patent Eligibility Under 35 U.S.C. § 101

"Laws of nature, natural phenomena, and abstract ideas are not patentable" under 35 U.S.C. § 101.  *Alice*, 573 U.S. at 216.  Abstract ideas, "no matter how '[g]roundbreaking, innovative, or even brilliant,' are outside what the statute means by 'new and useful process, machine, manufacture, or composition of matter.'"  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (alteration in original).

Courts analyze patent eligibility under 35 U.S.C. § 101 using a two-part framework. *Alice*, 573 U.S. at 217-218.  At the first step, assessing whether claims are directed to an

ineligible concept such as an abstract idea, the Court "looks at the 'focus' of the claims," i.e., their "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quotations omitted); *see also Alice*, 573 U.S. at 217; *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). If so, then the second step asks whether the claims contain an "inventive concept": an element or combination of elements sufficient to ensure that the claims amount to significantly more than a patent upon the abstract idea itself. *Alice*, 573 U.S. at 217-218. This motion addresses only the first step of the analysis, which is primarily a question of law. *See, e.g.*, *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-662-JRG-RSP, 2019 WL 13077855, at *3 (E.D. Tex. Apr. 18, 2019), *report and recommendation adopted*, No. 2:17-CV-661-JRG-RSP, 2019 WL 1987204 (E.D. Tex. May 6, 2019) ("*Alice* Step One involves only questions of law[.]").

The Court may rely on representative claims where claims are "substantially similar and linked to the same abstract idea." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-CV-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea").

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   The asserted claims of the '541 patent are claims 1-4.

2.   The asserted claims of the '090 patent are claims 1-6.

### A.   The '541 Patent

3.   During prosecution of the '541 patent, the applicant originally submitted the

2

claims of the '541 patent (Ex. 1) without the "so as to prevent the generation of wrinkles at a surface of the copper foil" limitation. Ex. 2 at SKN-0001793-794; *id.* at 2289-293, -2297-299.

4.    The examiner rejected the '541 patent claims, reasoning that the electrolytic foil at issue already existed in several prior art references, explaining:

a.    Hirose discloses a copper foil used in a lithium battery current collector and teaches an ideal ratio between the (200) and (111) planes to improve battery characteristics. Ex. 2 at -2319-320. The applicant admitted during prosecution that "among Examples satisfying the conditions of Claim 1 of the ['541 patent] application, some examples satisfy the condition of the ratio I(200)/1(111) of *Hirose*[.]" Ex. 2 at -2302-309 (applicant's response). The examiner stated that "Hirose [ ] recognizes that these crystal planes are important characteristics for a copper foil in a battery, and thus, the relative abundance or scarcity of these crystal planes, and by corollary, any measure of the intensity of these planes in the copper foil, are result effective variables." *Id.* at -2320.

b.    Weight deviation is presumed to be 0% absent objective contrary evidence. *Id.*

c.    Matsuda discloses a tensile strength of more than 30 kgf/mm$^2$. *Id.*

d.    Regarding dependent claim 2, Nishimoto discloses a surface roughness RzJIS about 0.2 µm to 0.7 µm. *Id.* at -2323.

e.    Regarding dependent claim 3, Matsuda discloses an elongation of at least 8%. *Id.* at -2322.

f.    Regarding dependent claim 4, Battey discloses a thickness of 5 to 50 µm. *Id.* at -2323.

5.    In response to this rejection, the applicant amended the claims to recite "so as to prevent the generation of wrinkles at a surface of the copper foil," and relied on the amendment

3

to distinguish the prior art.  *Id.* at -2332-333.

a.  ***First***, following a rejection, the applicant distinguished prior art because "wrinkles are generated at the surface of the copper foil" of the prior art.  *Id.* at -2306.

b.  ***Second***, the examiner rejected the claim, noting that "features upon which applicant relied[d] (i.e., the lack of wrinkles on the surface of the copper foil) [were] not recited in the rejected claims."  *Id.* at -2318.

c.  ***Third***, during an interview, the applicant and examiner discussed an amendment that would "decrease wrinkle generation," and the examiner "suggested the use of language such as 'prevent' wrinkle generation' to more clearly delineate what was meant by the wording, and more accurately reflect data presented in Table 1 of the Specification in order to advance full prosecution."  *Id.* at -2329; *see also* Ex. 1 at Table 1, 5:17-25 ("no wrinkle occurs").

d.  ***Fourth***, the applicant amended the claims to require "so as to prevent the generation of wrinkles at a surface of the copper foil."  Ex. 2 at -2332-333.  Concurrently, the applicant distinguished the prior art, noting that it "contains wrinkles at the surface," *id*. at -2336, whereas the '541 patent prevents wrinkles such that "no wrinkles are created," *id*. at -2336-348.

e.  The no wrinkles limitation was the basis for allowance.  *Id.* at -2363 ("The prior art . . . does not teach or suggest . . . so as to prevent wrinkle generation.").

6.  The '541 patent states that wrinkles in an electrolytic copper foil were known "irregularities" that make it difficult to apply active coating uniformly.  Ex. 1 at 1:58-62.

**B.    The '090 Patent**

7.  During prosecution of the '090 patent (Ex. 3), the examiner initially rejected the patent claims.  Ex. 4 at SKN-0002914-2922.

a.  ***First,*** the examiner rejected the proposed claims (including dependent claims), noting that prior art discloses all of the limitations of the claims.  *Id.* at -2917-921.

4

b. ***Second***, in response, the applicant argued "the Examiner has not established a prima facie case of obviousness because none of the cited references explicitly or implicitly teach or suggest an electrolytic copper foil having a peak count roughness (Rpc) of the claimed range." *Id.* at -2955.

c. The applicant did not address the remaining dependent claims specifically, instead arguing that "[c]laims 2 to 11, each ultimately depend from or incorporate independent claim 1, and are allowable for substantially the same reasons as independent claim 1." *Id.* at -2955.

8. Measuring Rpc in accordance with the claim language was known in the art.

a. ***First***, the '541 patent describes measuring Rpc by calculating "the peak count roughness Rpc of each point is the number of effective peaks which rise above an upper criteria line of 0.5 µm per unit sampling length of 4 mm in a surface roughness profile obtained according to steel-iron test schedule (SEP 1940), and there is at least one valley deeper than a lower criteria line of -0.5 µm between adjacent ones of the effective peaks." Ex. 3 at 2:25-32.

b. ***Second***, the published Mahr manual for the measuring device disclosed in the patent, *id.* at 8:1-5 ("Rpc. . . was measured using the MahrSurf M300 roughness tester"), describes how to measure peak count Rpc through analysis of the upper and lower intersection lines. Ex. 5 at -6890, 6875.

c. ***Third***, the Mahr surface roughness testing machine described in the patent has the "basic setting" for C1 and C2 set to ±0.5 µm when measuring Rpc. *See* Ex. 6 at -8774.

## V.    ARGUMENT

### A.    The '541 Patent's Claims Recite Patent-Ineligible Subject Matter

#### 1.    *Alice* Step One: Independent Claim 1 Is Directed to an Abstract Idea—Eliminating Wrinkles

In assessing whether a claim is "directed to" an abstract idea at *Alice* Step One, one must

5

"look at the focus of the ***claimed advance over the prior art*** to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs*, 838 F.3d at 1257 (quotations omitted); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020); *see also Parker v. Flook*, 437 U.S. 584, 593 (1978) (stating the § 101 inquiry must focus on determining "what type of discovery is sought to be patented"); *Finjan Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2011) ("We have approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art." (internal quotation, citation omitted)).

### a.   Independent Claim 1 Is Directed to Eliminating Wrinkles

Here, claim 1 (the sole asserted independent claim of the '541 patent) is directed to the abstract idea of eliminating wrinkles on the surface of a copper foil.  Although claim 1 recites a copper foil with a certain crystalline structure, which has a ratio of texture coefficients between 15% to 40%, "a weight deviation of 3% or less," and "a tensile strength of 30 to 40 kgf/mm2," the last limitation, added to secure allowance of the claim—"so as to prevent the generation of wrinkles at a surface of the copper foil"—is the focus of the claimed invention.

Specifically, when the examiner rejected the claims as being obvious over prior art disclosing the various properties of the claimed foil, SUMF ¶¶ 3-4, the applicant amended claim 1 to recite the "no wrinkles" limitation, arguing repeatedly that this attribute was important to distinguish the invention from the prior art, SUMF ¶ 5.  These arguments echoed the written description's teaching that "the present invention gives surface characteristics" that are "optimized not to generate a wrinkle." Ex. 1 at 3:3-7; *see also id.* at 1:18-22, 5:16-20.  Even the patent's title highlights the importance of eliminating wrinkles. Ex. 1 ("Copper Foil . . . with Improved Wrinkle Characteristics").

Furthermore, in its arguments seeking to overcome the examiner's rejection, the applicant

highlighted that the "no wrinkles" limitation is separate from the other properties recited in claim 1 and serves as the key feature distinguishing the alleged invention from the prior art. *See* SUMF ¶ 5. For example, the applicant argued that "the tensile strength taught by Matsuda is not a property of preventing the generation of wrinkles at the surface of the copper foil but rather a property of preventing the breakage of the copper foil." Ex. 2 at -2345. The tensile strength in Matsuda overlaps with the claimed range of tensile strengths. SUMF ¶ 4.c. Similarly, the applicant argued that Hirose was directed to "improving the cycle characteristic" of the battery and not the prevention of wrinkles. Ex. 2 at -2339-340. In the applicant's response to a rejection, the applicant admitted that one or more of Hirose's examples discloses a texture coefficient ratio within the claimed range of the '541 patent. SUMF ¶ 4.a. Further, when the examiner showed that all of the other limitations were present in the cited prior art references, the applicant argued that the prior art "contains wrinkles at the surface" of the copper foil, Ex. 2 at -2336, unlike the claimed invention that prevents wrinkles, *id*. at -2336-348. The applicant notably did not argue that the physical properties of the copper foil themselves were novel or patentable over the prior art. SUMF ¶ 5.

The intrinsic record thus shows that the wrinkles limitation was characterized as the claimed advance over the prior art and thus is the focus of the claims.

### b. Eliminating Wrinkles Is an Abstract Idea

Eliminating wrinkles on a copper foil is an abstract idea. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019) (finding that the focus of the claim, "the idea of network-controlled charging stations," was directed to an abstract idea associated with a tangible item). The '541 patent itself acknowledges that eliminating wrinkles had been a long-standing goal in order to improve the performance of copper foil used in batteries. Ex. 1 at 1:58-62. The fact that this abstract idea is limited to the field of copper foils having certain other

7

physical and mechanical properties—such as the texture coefficient, tensile strength, and weight deviation properties recited in claim 1—does not make the claims any less abstract. *Affinity Labs*, 838 F.3d at 1259 ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 609, 611 (Fed. Cir. 2016).

Furthermore, the presence of these physical limitations alone is not dispositive, as tangible systems, products, and other manufactured goods can be patent-ineligible for being directed to an abstract idea. *See, e.g.*, *Affinity Labs*, 838 F.3d at 1258 (broadcast system); *Yu*, 1 F.4th at 1043-44 (digital camera); *ChargePoint*, 920 F.3d at 770 (electric vehicle charging station); *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346-48 (Fed. Cir. 2019) (garage door opener).

*ChargePoint* is instructive. 920 F.3d at 770. In *ChargePoint*, the representative claim required a control device, a transceiver, and a controller coupled with the device and transceiver to comprise a charging station. *Id.* at 766. In addition to these structural elements, the claim required the idea of "communication over a network." *Id.* The court in *ChargePoint* noted that the "specification never suggests that the charging station itself is improved . . . or that it would operate differently than it otherwise would." *Id.* at 768. Because the structure did not lead to this claimed idea, the court found that the claim was improperly "directed to the abstract idea of communication over a network for interacting with a device" and is "associated with a physical machine that is quite tangible—an electric vehicle charging station." *Id.* at 769-70. In other words, the patent in *ChargePoint* failed to claim the improvement over existing technology, but instead improperly claimed an abstract idea associated with a tangible machine that already

8

existed.[1]  *Id.* at 768-769.

Because the '541 patent's claims merely marry the abstract idea of eliminating wrinkles to physical characteristics already existing in copper foils, claim 1 is directed to an abstract idea. *See* Ex. 7 ¶¶ 1287-98.

### 2.    The Dependent Claims Are Also Directed to the Abstract Idea of Eliminating Wrinkles

Claim 1 is representative for the *Alice* Step One inquiry because the dependent claims merely recite additional known, physical properties of a copper foil that has no wrinkles. Specifically, dependent claim 2 requires a surface roughness RzJIS of 2 µm or less; dependent claim 3 requires an elongation of 3 to 20%; and dependent claim 4 requires a thickness of 1 to 35 µm.  The specification explains that each of these characteristics is related to the idea of preventing wrinkles, like the characteristics of claim 1.  Ex. 1 at 2:5-10, 3:3-7. As the examiner found, each of these dependent limitations does not add any advance over the prior art—these physical properties were already known in the field, just like the crystalline structure with the ratio of texture coefficients, weight deviation, and tensile strength recited in claim 1.  *See* SUMF ¶ 4; Ex. 7 ¶ 1297.  The focus of the patent is the no wrinkles limitation recited in independent claim 1.  Ex. 1, Title ("Copper Foil for Current Collector of Lithium Secondary Battery with

---

[1] In *US Synthetic Corp. v. International Trade Commission*, the Federal Circuit found cases like *ChargePoint* inapplicable to a particular case addressing certain physical composition of matter claims.  128 F.4th 1272, 1284 (Fed. Cir. 2025).  The '541 patent is different than the composition of matter cases discussed in *US Synthetic* because here the examiner found during prosecution that the "constituent elements, dimensional information, and inherent material properties," *id.*, listed in claim 1 (tensile strength, texture coefficient, etc.) were present in the prior art.  SUMF ¶ 4.  As such, the '541 patent claims focus on only the abstract idea of "prevent[ing] the generation of wrinkles."  *See SAP Am.*, 898 F.3d at 1168 (holding claims patent ineligible because "the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas"); *Affinity Labs*, 838 F.3d at 1257 ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

Improved Wrinkle Characteristics"). Thus, claim 1 is representative of remaining asserted claims 2-4, and all are directed to an abstract idea.

**B.    The '090 Patent's Claims Are Directed to Unpatentable Subject Matter**

**1.    *Alice* Step One: Independent Claim 1 is Directed to Unpatentable Subject Matter—Measurement of a Natural Phenomenon**

Claims directed to "detecting natural phenomena" using "collection and measurement techniques" that are "conventional" are directed to unpatentable subject matter. *CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1377-78 (Fed. Cir. 2022) (holding claims to methods of detecting organ transplant rejection invalid as patent ineligible under 35 U.S.C. § 101).

**a.    Independent Claim 1 Is Directed to Observing Rpc**

Here, claim 1 of the '090 patent (the sole asserted independent claim of the '090 patent) is directed to observing, using known measuring techniques, a natural phenomenon exhibited by copper foil created by a pre-existing foil-making method.[2] This property is known as "peak count roughness" or "Rpc." Specifically, claim 1 recites electrolytic copper foils containing the broad range of Rpc of 10 to 100. Ex. 3 at claim 1; Ex. 7 ¶¶ 1306-07.

According to the specification, the named inventors recognized that this Rpc parameter "is an important factor in stably securing capacity maintenance of 90% or higher" and that another parameter considered in the industry ($R_{ZJIS}$ less than 2 μm) "cannot be a sufficient condition for capacity maintenance of 90% or higher." Ex. 3 at 5:4-23. The prosecution history of the '090 patent confirms that the measured Rpc range is the focus of the claim. During prosecution, when the examiner rejected the pending claims, the applicant focused its arguments

---

[2] "An electrolytic copper foil is fabricated via deposition of copper on a rotating, charged drum." Ex. 3 at 2:60-65. Contact with this drum inherently imparts some roughness (e.g., bumps and ridges) on the resultant foil. Rpc is one method of measuring this roughness. SUMF ¶ 8; Ex. 5 at -6889-891 (listing surface roughness parameters including Rpc).

on the Rpc limitations of claims 1 and 2, and not on the remaining limitations.  SUMF ¶ 7; Ex. 4 at -2955 (arguing "the Examiner has not established a *prima facie* case of obviousness because none of the cited references explicitly or implicitly teach or suggest an electrolytic copper foil having a peak count roughness (Rpc) of the claimed range").  Indeed, the rest of claim 1 simply recites a foil having two surfaces, each of which has the recited Rpc, and then describes how to measure Rpc ("the number of effective peaks which rise above an upper criteria line of 0.5 μm per unit sampling length of 4 mm in a surface roughness profile obtained according to steel-iron test schedule (SEP 1940), and there is at least one valley deeper than a lower criteria line of -0.5 μm between adjacent ones of the effective peaks") and how many measurements to make ("an average of peak count roughness Rpc values measured at randomly-selected three points").  Ex. 3 at 10:9-27.

Therefore, claim 1 is directed to electrolytic copper foils having Rpc of 10 to 100.  *See CareDx, Inc.,* 40 F.4th at 1379 (focusing on what the challenged claims "boil down to" for purposes of eligibility analysis).

### b. Rpc Is a Known Measure for Observation of a Natural Phenomenon

Observing and measuring the surface roughness (whether in the form of Rpc or some other metric) is nothing more than the observation of a natural phenomenon occurring in copper foils, and such an observation of a natural phenomenon is unpatentable subject matter.  Indeed, methods for achieving this broad Rpc range have been known in the prior art for years.  SUMF, ¶ 8; Ex. 7 ¶¶ 1306-07.

***First***, the patent claims do not purport to cover any particular method of making copper foil with an Rpc within the claimed range such that it would amount to an advance over the prior art.  *See, e.g.*, *CareDx, Inc.*, 40 F.4th  at 1377 ("This is not a case involving . . . a new

11

███████████████████████

measurement technique."). Rather, claim 1 recites merely a result—a particular Rpc—without specifying any concrete, "physical structure or steps for achieving the claimed result," which is a hallmark of subject matter ineligibility. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1295 (Fed. Cir. 2020); *id.* at 1295-98 ("Claiming a result that involves application of a natural law without limiting the claim to particular methods of achieving the result runs headlong into the very problem repeatedly identified by the Supreme Court in its cases shaping eligibility analysis. The Supreme Court has long held that claims that state a goal without a solution are patent ineligible." (internal citations omitted)); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (holding claims reciting "essentially result-focused, functional character of claim language" patent-ineligible). Although the specification discloses manufacturing steps that allegedly would produce the claimed Rpc result, *e.g.*, Ex. 3 at 6:29-51, none of this specificity is part of the claims. *Am. Axle,* 967 F.3d at 1295 ("[U]nclaimed features cannot function to remove [a] claim . . . from the realm of ineligible subject matter."). As discussed above, claim 1 simply recites a foil having two surfaces, each of which has the recited Rpc, and then describes how to measure Rpc and how many measurements to make. Ex. 3 at 10:9-27.

*Second*, the patent does not purport to claim a novel way to measure Rpc—the claimed method, using the steel-iron test schedule (SEP 1940), was known in the art. SUMF ¶ 8a.-c.

*Third*, SKN's expert opined that the claimed range of 10-100 is so broad that ████████

███████████████████████████████████████████

████████, and further confirmed that it "would be [his] best guess" that "[p]rior to the '090 patent [there] were copper foils of Rpc of 10 to 100 sold." Ex. 8 ¶ 656; Ex. 9 at 237:18-21. In other words, according to SKN, the claimed range monopolizes every implementation of this

12

parameter, broadly preempting future innovation—an indication that the claims are directed to ineligible subject matter. *See, e.g.*, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012) ("[Our cases] warn us against upholding patents that claim processes that too broadly pre-empt the use of a natural law.").

The *CareDx* opinion is instructive. The patents at issue in that case were directed to diagnosing organ transplant status by using methods to detect an indicator of rejection, referred to as cell-free DNA ("cfDNA"), in a patient's blood. 40 F.4th at 1372. The patents further taught using the "natural correlation between heightened cfDNA levels and transplant health to identify a potential rejection." *Id.* at 1379. The Federal Circuit affirmed the district court's holding that the patents were directed to natural phenomena:

> CareDx does not actually claim any improvements in laboratory techniques—rather, as previously discussed, the actual claims of the patent merely recite the conventional use of existing techniques to detect naturally occurring cfDNA. Furthermore, the specification admits that the laboratory techniques disclosed in the claims require only conventional techniques and off-the-shelf technology.

*Id.* at 1379-80. Here, as in *CareDx*, claim 1 of the '090 patent recites the measurement of a natural phenomenon (copper foil surface roughness), using a known measurement technique (steel-iron test schedule (SEP 1940)), to confirm that surface roughness falls within a broad, preemptive range (10-100). It should receive the same treatment with respect to *Alice* Step One analysis.

Because claim 1 is directed to measuring the Rpc of an electrolytic copper foil, a mere observation of the natural phenomenon of bumps and ridges in a copper foil that occur when copper foil comes in contact with a charged drum, it fails *Alice* Step One.

### 2. The Dependent Claims Are Also Directed to Measurement of a Natural Phenomenon

Claim 1 is representative for the *Alice* Step One inquiry because the dependent claims

13

merely recite additional known, physical properties of a copper foil that have an Rpc for both surfaces of 10-100.  Specifically, claim 2 requires a difference in peak count roughness Rpc between the first and second surfaces at 60 or less; claim 3 requires "each of the first and second surfaces has a ten-point mean roughness RzJIS of 2 μm or less"; and claim 4 requires that the copper foil of claim 1 "has a thickness of 3 to 20 μm and tensile strength of 30 to 60 kgf/mm2." Claim 5 recites a protective layer comprising at least one of chromate, benzotriazole, and a silane compound.  Claim 6 additionally requires the protective layer be formed on both surfaces of the copper foil.  As the examiner found, each of these dependent limitations do not add any advance over the prior art—these physical properties were already known in the field.  *See* SUMF ¶ 7.a; Ex. 7 ¶ 1311.  The focus of the patent is the Rpc limitation recited in independent claim 1.  Thus, claim 1 is representative and all asserted claims are directed to observation of a natural phenomenon, which renders them patent-ineligible at *Alice* Step One.

## VI.    CONCLUSION

Accordingly, Volta respectfully requests that the Court find the asserted claims of the '541 and '090 patents are directed to abstract ideas or natural phenomena under *Alice*.

Dated: August 8, 2025                                    Respectfully submitted,

                                                         */s/ Daniel A. Tishman*

Melissa R. Smith (State Bar No. 24001351)        Michael J. McKeon (DC Bar No. 459780)
GILLAM & SMITH, LLP                              Lauren A. Degnan (DC Bar No. 452421)
303 South Washington Avenue                      Ralph A. Phillips (DC Bar No. 475571)
Marshall, Texas 75670                            Daniel A. Tishman (DC Bar No. 1013923)
Telephone: (903) 934-8450                        Bryan J. Cannon (DC Bar No. 1723657)
Facsimile:  (903) 934-9257                       Brendan F. McLaughlin (DC Bar No. 1671658)
Email: melissa@gillamsmithlaw.com                FISH & RICHARDSON P.C.
                                                 1000 Maine Avenue, S.W., Suite 1000
Andrew Thompson ("Tom") Gorham                   Washington, D.C. 20024
State Bar No. 24012715                           Telephone: (202) 783-5070
GILLAM & SMITH, L.L.P.                           Facsimile:  (202) 783-2331
102 N. College, Suite 800                        Email: mckeon@fr.com, degnan@fr.com,

14

████████████████████████████████

Tyler, Texas 75702
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257
Email: tom@gillamsmithlaw.com

rphillips@fr.com, tishman@fr.com,
cannon@fr.com, bmclaughlin@fr.com

Jacqueline Tio (GA Bar No. 940367)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002
Email: tio@fr.com

Chet Campbell (MA Bar No. BBO #688,190)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906
Email: cycampbell@fr.com

Meghana Thadani (NY Bar No. 5851901)
FISH & RICHARDSON, P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 641-2215
Facsimile:  (212) 258-2291
Email: thadani@fr.com

*Attorneys for Defendants Solus Advanced Materials Co., Ltd.,*
*Volta Energy Solutions Canada Inc., Volta Energy Solutions Europe KFT,*
*Volta Energy Solutions Hungary KFT, Volta Energy Solutions S.A.R.L.*

15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on August 8, 2025.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

/s/ Daniel A. Tishman