IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SK NEXILIS CO., <br><br> Plaintiff, <br><br> v. <br><br> SOLUS ADVANCED MATERIALS CO., LTD., VOLTA ENERGY SOLUTIONS S.A.R.L., VOLTA ENERGY SOLUTIONS EUROPE KFT., VOLTA ENERGY SOLUTIONS HUNGARY KFT., and VOLTA ENERGY SOLUTIONS CANADA INC. <br><br> Defendants. | Civil Action No. 2:23-cv-00539-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**VOLTA'S MOTION TO STRIKE PORTIONS
OF THE EXPERT REPORTS OF DR. QUINN HORN**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF EXHIBITS ........................................................................................................... iii

TABLE OF ABBREVIATIONS ............................................................................................. iii

I.  INTRODUCTION ........................................................................................................ 1

II. GOVERNING LAW .................................................................................................... 1

III. ARGUMENT ................................................................................................................ 1

    A.  The Court Should Exclude Dr. Horn's Infringement Conclusions ......................... 1

    B.  The Court Should Exclude Dr. Horn's Opinions on Copying ................................ 4

    C.  The Court Should Bar Dr. Horn from Introducing Any Opinions Regarding the Doctrine of Equivalents ................................................................. 7

    D.  The Court Should Strike Dr. Horn's Opinions That the Asserted Patents Are Directed to "Virgin Copper Foils" ....................................................... 8

    E.  Dr. Horn's Opinions Regarding the Wrinkle Limitation of the '541 Patent Are Subject to Volta's Motion To Strike SKN's Infringement Contentions ........................................................................................ 9

IV. CONCLUSION ............................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrill Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ............................................................................................................. 1, 4, 8

*Dhillon v. Crown Controls Corp.*,
   269 F.3d 865 (7th Cir. 2001) ........................................................................................................ 5

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*,
   560 F. Supp. 2d 227 (W.D.N.Y. 2008) ........................................................................................ 3

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ....................................................................................................... 5

*Headwater Rsch. LLC v. Verizon Commc'ns Inc.*,
   No. 2:23-CV-00352-JRG-RSP, 2025 WL 1739330 (E.D. Tex. June 23, 2025) ......................... 6

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003) .................................................................................................. 7

*Intell. Sci. and Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) .................................................................................................. 4

*Romero v. Wyeth Pharms., Inc.*,
   No. 1:03-CV-1367, 2012 WL 12905978 (E.D. Tex. Apr. 26, 2012) .......................................... 6

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
   No. 2:07-CV-335-TJW-CE, 2010 WL 457142 (E.D. Tex. Feb. 5, 2010) ................................... 7

*Sonos, Inc. v. D & M Holdings Inc.*,
   297 F. Supp. 3d 501 (D. Del. 2017) ............................................................................................ 5

*Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*,
   No. 2:23-CV-00059-JRG-RSP, 2025 WL 254110 (E.D. Tex. Jan. 21, 2025) ............................ 8

*VLSI Tech. LLC v. Intel Corp.*,
   87 F.4th 1332 (Fed. Cir. 2023) ................................................................................................... 7

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Opening Expert Report of Dr. Quinn Horn (July 10, 2025) (excerpts) |
| 2 | Rebuttal Expert Report for Dr. Craig Arnold (July 28, 2025) (excerpts) |
| 3 | ███████████████████████ (VOLTA_00204129) |
| 4 | ███████████████████████████████ (SKN-0003174) |
| 5 | Article: Measuring Procedures for Evaluating the Surface Roughness of Machined Parts (VOLTA_00019807) (excerpts) |
| 6 | Volta's Suppl. Resp. to SKN 2nd Set of Interrogs. No. 11-13 (July 8, 2025) (excerpts) |
| 7 | Rebuttal Expert Report of Dr. Quinn Horn (July 28, 2025) (excerpts) |
| 8 | Rough Deposition Transcript of Dr. Quinn Horn (August 7, 2025) (excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Accused Products | BF-PLSP-8μm, BF-PLSP-6μm, SR-PLSP-6μm, and HTS-PLSP |
| Asserted Patents | '541, '090, '689, '014, and '706 patents |
| DOE | Doctrine of Equivalents |
| SKN | SK Nexilis Co., Ltd. |
| Solus | Solus Advanced Materials Co., Ltd. |
| Volta | Solus, Volta Energy Solutions S.A.R.L., Volta Energy Solutions Europe KFT, and Volta Energy Solutions Hungary KFT |
| '541 patent | U.S. Patent No. 9,457,541 |
| '090 patent | U.S. Patent No. 10,480,090 |
| '689 patent | U.S. Patent No. 10,811,689 |
| '014 patent | U.S. Patent No. 11,346,014 |
| '706 patent | U.S. Patent No. 11,591,706 |

I.   **INTRODUCTION**

The Court should strike portions of Dr. Horn's expert reports that are unreliable, unhelpful, or outside of his expertise. First, Dr. Horn's infringement conclusions are based on sampling of a miniscule portion of the Accused Products, and Dr. Horn offers no representativeness analysis required to extrapolate his analysis to all of the Accused Products. Thus, his conclusion that all of the Accused Products infringe is not based on reliable data or methodologies. Second, Dr. Horn's opinions on copying are unhelpful to the jury and outside of his expertise—an expert's job is not merely to act as a mouthpiece to read evidence into the record, and the jury is competent to reach its own conclusions regarding Volta's state of mind. Moreover, given the minimal relevance and the likelihood of confusing the jury and prejudicing Volta, the opinions should be excluded under Rule 403. Third, Dr. Horn's conclusory opinions on the doctrine of equivalents are unreliable and insufficient. Finally, Dr. Horn's opinion that the Asserted Patents are directed to "virgin copper foil" that has not been incorporated into a battery is entirely unsupported, unreliable, and unhelpful.

II.   **GOVERNING LAW**

Rule 702 requires that an expert's testimony be (a) based on specialized knowledge helpful to the trier of fact, (b) based on sufficient facts or data, (c) based on reliable methods, and (d) reliably applied to the facts of the case, as well as the gatekeeping task with which the Court is charged under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).

III.   **ARGUMENT**

   A.   **The Court Should Exclude Dr. Horn's Infringement Conclusions**

The Court should exclude Dr. Horn's opinions that the "Accused Products" as a whole infringe the Asserted Patents because Dr. Horn relied on the results of tests conducted on a very small sampling area of Volta's copper foils and failed to establish that his sampling area is

1

representative of all of the Accused Products. *See e.g.*, Ex. 2 ¶ 56; Ex. 1 ¶ 55. Dr. Horn's infringement opinions are thus not based on reliable scientific methods; they are conclusory and unsupported.

In particular, Dr. Horn tested a small fraction of a subset of rolls of Volta's copper foil and offered no basis or opinions to support extrapolating his results to samples that he did not test. For example, each profilometer test measures only 0.18 mm$^2$. *See e.g.*, Ex. 2 ¶ 56. Test results from such a small sample cannot be used to support a finding of infringement of the entirety of the Accused Products, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Horn's testing also accounts for only a small fraction of the Accused Product samples he received from Volta. Specifically, he only tested three letter-size sheets from a subset of the rolls of the Accused Products, including sheets from only *five* rolls of the eleven rolls of BF-PLSP-8µm. Ex. 6 at 4.

Dr. Horn's approach is particularly unreliable because the surface roughness properties of copper foils are known to be variable in the copper foil industry. *See, e.g.*, Ex. 5 at -9831 ("The surface roughness and its quantities are characterized by a high degree of variability, and this is also related to the fact that it is quite difficult to implement the individual surfaces of the components so that their surface roughness is the same in every place of this surface."). Dr. Horn acknowledged that the surface of the electroplating drum—which controls the surface roughness of one side of the copper foil—degrades over time, which causes changes to the surface roughness. Ex. 8 at 232:14-234:11.

2

In addition to surface roughness, Dr. Horn acknowledged that he would not expect different foil samples to have the same properties because there is variability with respect to "[p]retty much every single parameter" in the manufacturing process:

> Q. Is it your understanding that every roll of the BF8-micron product should have the same properties?
>
> A. I would not expect every roll to have exactly the same properties. There's always going to be variability in the—in the material. You know, and there's going to be—it's a manufacturing process, so there is going to be a certain amount of variability in a manufacturing process, so I don't expect each roll to have exactly the same properties.
>
> Q. What are the sources of variability in the manufacturing process?
>
> A. Sorry. I'm laughing a bit. I guess we're gonna go late tonight, huh? Pretty much every single parameter that we list, that you list, is from the—every parameter in the electrolyte formulation to current density to temperature of the bath, speed, you know, changes of the drum, surface quality of the drum, consumption of additives in the electrolyte bath with time.
>
> You know, there are sources of variability and many sources of variability—any sources of process variability that will affect different characteristics of final product variability. That's why typically spec sheets have ranges on them—right?—because—as opposed to an absolute number, because it's widely understood in manufacturing that you have variability in manufacturing process.

Ex. 8 at 250:24-252:4. Dr. Horn's small sampling area and test results do not take this variability into account and, therefore, are not representative of the Accused Products. Critically, Dr. Horn offers no opinion or analysis that the tested samples are representative for non-tested portions. Indeed, Dr. Horn's expert reports do not discuss "any of the process conditions of the—to make the—the foil" in his expert reports. Ex. 8 at 112:22-113:20.

Considering similar facts, in *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, the Western District of New York found no literal infringement where the plaintiff's expert tested a small sample relative to the total area of the accused product. 560 F. Supp. 2d 227, 273-75 (W.D.N.Y. 2008) ("Considering that an emulsion may be coated onto substrate in excess of 100,000 square

meters and yet the sample is substantially much smaller, then it makes logical sense that there will be variability across that substrate for any number of reasons. Kodak would have one assume that such a small sample is representative of such a large area of coated material."). The court explained that "the variability of results and the small sample relative to total product . . . lessens to insignificance any confidence that the batch literally infringes." *Id.* at 290.

Here, too, given the small sampling area Dr. Horn tested, his failure to explain why he did not test a greater surface area of the samples provided, his inability to establish that the sampling area is representative of all Accused Products, and the variability of the test results, Dr. Horn's conclusions that the Accused Products infringe are not based on scientifically valid methodology and are therefore unreliable. *See Daubert*, 509 U.S. at 580 ("[T]he trial judge . . . must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid[.]"); *Intell. Sci. and Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) ("An expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact.").

Accordingly, the Court should strike the following opinions: Ex. 1 ¶¶ 4-8, 222-225, 230, 232, 238, 243, 246, 251, 262, 271, 275, 279, 280, 282, 284, 300, 305, 310, 315, 322, 324, 330, 332, 333, 336, 343, 349, 354, 359, 363, 380, 386, 391, 397, 400, 403, 404, 407, 413, 416, 436, 441, 442, 445, 446, 449, 456, 464, 478, 487, 496, 499, 502.

    **B.**    **The Court Should Exclude Dr. Horn's Opinions on Copying**

The Court should exclude Dr. Horn's opinions that Volta copied SKN's technology (Ex. 1 ¶¶ 614-630) because such opinions are conclusory, unhelpful to the jury, outside the scope of his purported expertise, and substantially more prejudicial than probative.

*First*, Dr. Horn merely parrots Volta documents about SKN or competitor products and asserts in a conclusory fashion there was copying. However, "expert testimony on the issue of

4

copying" "is not likely to be helpful to the jury, which is fully competent to evaluate the evidence and draw its own conclusion." *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) (excluding copying opinions); *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) ("An expert . . . must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.").

Here, Dr. Horn's opinions are particularly unhelpful for the jury because, in reaching his conclusion that Volta copied SKN's technology, Dr. Horn merely catalogs Volta documents without any proper expert analysis on copying. In other words, he merely summarizes documents that are about SKN, its products, or patents generally, and concludes that Volta must have copied. For example, Dr. Horn offers the following opinion:



Ex. 1 ¶ 623. However, there is nothing about his "analysis" (summarizing documents) that requires expert testimony, and it is improper for an expert to merely read documents into the record. *See Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving

5

expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.")[1]

***Second***, Dr. Horn's technical "background[] do[es] not provide [him] with knowledge of [Volta's] state of mind or intent." *Romero v. Wyeth Pharms., Inc.*, No. 1:03-CV-1367, 2012 WL 12905978, at *6-7 (E.D. Tex. Apr. 26, 2012) (excluding technical and marketing experts' opinions regarding state of mind and intent because such opinions were outside the scope of their expertise). Dr. Horn's speculation that Volta must have copied if ▮▮▮▮▮▮ are well outside of his expertise. Ex. 1 ¶¶ 614-15.

***Finally***, the Court should strike Dr. Horn's copying opinions because they are substantially more prejudicial and likely to confuse the jury than they are probative. To be sure, these copying opinions are entirely unrelated to Dr. Horn's technical infringement opinions. And although he offers opinions about Volta's reviewing certain technology, he does not opine that Volta actually implemented technology based on such review. Indeed, the documents on which he relies all ***post-date*** the development of the Accused Products—Volta began selling the Accused Products in November 2020, and Dr. Horn cites only documents from November 2020 and later. *See* Ex. 2 ¶ 165; Ex. 1 ¶ 615-29. Thus, the documents on which Dr. Horn relies cannot serve as evidence of copying as it relates to the Accused Products, which had already

---

[1] Although this Court has permitted technical experts to opine on copying, such opinions have historically involved technical analysis that is helpful to the trier of fact. *See, e.g., Headwater Rsch. LLC v. Verizon Commc'ns Inc.*, No. 2:23-CV-00352-JRG-RSP, 2025 WL 1739330, at *6 (E.D. Tex. June 23, 2025) (finding expert testimony on copying admissible where it involved a complex technical comparison between the accused product and the plaintiff's technology, but noting that "there may be situations involving sufficiently simple and straightforward technologies in which an assessment of copying is something the jury can easily do on its own").

6

been developed and were on sale at the time of the supposed copying. These documents thus lack any relevance or probative value, and they are likely to confuse the jury into believing that they are relevant to the infringement case, thereby unfairly prejudicing Volta. Such speculation about copying—made by a witness whose testimony might be given undue weight due to his role as an "expert"—will serve to taint the jury against Volta without any probative value. Thus, the Court should strike Dr. Horn's copying opinions. *See* Ex. 1 ¶¶ 614-630.

### C. The Court Should Bar Dr. Horn from Introducing Any Opinions Regarding the Doctrine of Equivalents

The Court should preclude Dr. Horn from offering any opinions under the doctrine of equivalence because he provides only conclusory statements that the Accused Products allegedly infringe under the DOE but does not conduct any DOE analysis. His DOE opinions are thus legally insufficient. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 2:07-CV-335-TJW-CE, 2010 WL 457142, at *8-10 (E.D. Tex. Feb. 5, 2010) (striking portion of expert's opinion regarding the DOE because his "report only provided a boilerplate and a mere conclusory analysis under the doctrine of equivalents"); *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1344-45 (Fed. Cir. 2023). Dr. Horn's report only mentions DOE in the legal standard section and his summary of opinions, where he states "[t]o the extent these Accused Products do not literally infringe, it is my opinion that they infringe these claims under the doctrine of equivalents." *See* Ex. 1 ¶¶ 4-8; 196-201. Dr. Horn later fails to provide any analysis regarding DOE—in fact, his Opening Report does not make any further mention of DOE. Given his complete lack of DOE analysis, the Court should strike ¶¶ 4-8 and 196-201 of Dr. Horn's Opening Report, and he should not be permitted to introduce the concept of equivalents. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (DOE requires "particularized testimony and linking").

7

### D. The Court Should Strike Dr. Horn's Opinions That the Asserted Patents Are Directed to "Virgin Copper Foils"

In his Rebuttal Report, Dr. Horn argues that Asserted Patents are directed to "virgin copper foils that are used to manufacture batteries, not copper foils extracted from an already manufactured (and used) batteries." Ex. 7 ¶ 207.  Dr. Horn provides no evidence from the Asserted Patents, however, to support that assertion.  In fact, neither the claims nor the specifications of the Asserted Patents contemplate whether the claimed copper foil exists in a battery or pre-battery manufacture.  *See generally* Dkt. 1-6; Dkt. 1-7; Dkt. 1-8; Dkt. 1-9; Dkt. 9-10.  Such unreliable and unsupported opinions are inadmissible.  *See Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation.").

In addition to being unsupported by the patent, Dr. Horn's opinion that "a POSITA reviewing the Patents-in-Suit would have understood that the claimed inventions are directed to virgin copper foils that are used to manufacture batteries, not copper foils extracted from an already manufactured (and used) batteries" amounts to an improper claim construction opinion, outside of the deadline for offering such positions.  *See, e.g.*, *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23-CV-00059-JRG-RSP, 2025 WL 254110, at * 2 (E.D. Tex. Jan. 21, 2025) (precluding an expert from providing "improper claim construction opinions that would be highly confusing to the jury").

Dr. Horn's statements that the copper foils claimed by the Asserted Patents are "virgin copper foils" that have not already been incorporated in a battery should be stricken as unreliable, unsupported, and improper claim construction opinions.  *See, e.g.*, Ex. 7 ¶¶ 206-07, 229, 252, 253-54, 276, 299, 301, 304, 368-70.

8

### E. Dr. Horn's Opinions Regarding the Wrinkle Limitation of the '541 Patent Are Subject to Volta's Motion To Strike SKN's Infringement Contentions

Dr. Horn's opinions regarding Volta's alleged infringement of the wrinkle limitation of the '541 patent are subject to Volta's Motion To Strike SKN's Infringement Contentions, filed concurrently herewith. To the extent the Court grants Volta's Motion To Strike SKN's Infringement Contentions, the following paragraphs of Dr. Horn's Opening Report should be excluded as unsupported by infringement contentions: Ex. 1 ¶¶ 252-62.

### IV. CONCLUSION

Accordingly, the Court should strike the following portions of Dr. Horn's expert reports:

| Horn Opening Report (Ex. 1) | Horn Rebuttal Report (Ex. 7) |
|---|---|
| ¶¶ 4-8, 196-201, 222-25, 230, 232, 238, 243, 246, 251-62, 271, 275, 279, 280, 282, 284, 300, 305, 310, 315, 322, 324, 330, 332, 333, 336, 343, 349, 354, 359, 363, 380, 386, 391, 397, 400, 403, 404, 407, 413, 416, 436, 441, 442, 445, 446, 449, 456, 464, 478, 487, 496, 499, 502, 614-30 | ¶¶ 206-07, 229, 252, 254, 276, 299, 301, 304, 368-70 |

Dated: August 8, 2025

Respectfully submitted,

*/s/ Daniel A. Tishman*

Melissa R. Smith (State Bar No. 24001351)
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
GILLAM & SMITH, L.L.P.
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com

Michael J. McKeon (DC Bar No. 459780)
Lauren A. Degnan (DC Bar No. 452421)
Ralph A. Phillips (DC Bar No. 475571)
Daniel A. Tishman (DC Bar No. 1013923)
Bryan J. Cannon (DC Bar No. 1723657)
Brendan F. McLaughlin (DC Bar No. 1671658)
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331
Email: mckeon@fr.com, degnan@fr.com,
rphillips@fr.com, tishman@fr.com,
bmclaughlin@fr.com, cannon@fr.com

Jacqueline Tio (GA Bar No. 940367)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002
Email: tio@fr.com

Chet Campbell (MA Bar No. BBO #688,190)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906
Email: cycampbell@fr.com

Meghana Thadani (NY Bar No. 5851901)
FISH & RICHARDSON, P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 641-2215
Facsimile:  (212) 258-2291
Email: thadani@fr.com

*Attorneys for Defendants Solus Advanced Materials Co., Ltd.,
Volta Energy Solutions Canada Inc., Volta Energy Solutions Europe KFT,
Volta Energy Solutions Hungary KFT, Volta Energy Solutions S.A.R.L.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on August 8, 2025. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

                                                           */s/ Daniel A. Tishman*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on August 8, 2025. Harrison Rose attended for Plaintiff. Daniel Tishman attended for Defendants. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion, except that they do not oppose as to Dr. Horn's doctrine of equivalents opinions but reserve the right to respond and explain their position.

                                                           */s/ Daniel A. Tishman*