**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **SK NEXILIS CO., LTD.,** | |
| *Plaintiff,* | |
| v. | **Civil Action No. 2:23-cv-00539-JRG-RSP** |
| **SOLUS ADVANCED MATERIALS CO., LTD., VOLTA ENERGY SOLUTIONS S.A.R.L., VOLTA ENERGY SOLUTIONS EUROPE KFT., VOLTA ENERGY SOLUTIONS HUNGARY KFT., AND VOLTA ENERGY SOLUTIONS CANADA INC.,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

<u>**PLAINTIFF SKN'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. CRAIG ARNOLD**</u>

## TABLE OF CONTENTS

**Page**

I.   *Daubert* Motion Regarding Dr. Arnold's Opinions Concerning SKn's Burden to Prove Infringement ............................................................................................................. 1

II.  *Daubert* Motion Regarding Dr. Arnold's Opinions that Misapply the Court's Construction of "Rz" in Claim 1 of the '689 Patent ........................................................ 4

III. *Daubert* Motion Regarding Dr. Arnold's Opinions that Misapply the Court's Construction of "Rz" in Claim 1 of the '706 Patent ........................................................ 6

IV.  Motion to Exclude Dr. Arnold's Untimely Disclosed Opinions Regarding Non-Infringing Alternatives ...................................................................................................... 6

V.   Motion to Exclude Dr. Arnold's Reliance on Testing Results Not Disclosed During Fact Discovery ........................................................................................................ 9

     A.   Legal Standard ............................................................................................................ 9

     B.   Factual Background .................................................................................................. 10

          CFL-10 and CFL-12 ................................................................................................ 10

          Samples of Accused Product BF-PLSP-8μm ........................................................ 10

     C.   Argument .................................................................................................................. 10

VI.  CONCLUSION ........................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Askanase v. Fatjo,*
130 F.3d 657 (5th Cir. 1997) ............................................................................... 3

*Beckson Marine, Inc. v. NFM, Inc.,*
292 F.3d 718 (Fed. Cir. 2002) ............................................................................. 2

*Betzel v. State Farm Lloyds,*
480 F.3d 704 (5th Cir. 2007) ......................................................................... 11, 12

*Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.,*
951 F.3d 248 (5th Cir. 2020) ............................................................................... 9

*Freeny v. Murphy Oil Corp.,*
No. 2:13-CV-791-RSP, 2015 WL 11089607 (E.D. Tex. June 4, 2015) ............ 12, 13

*Geiserman v. MacDonald,*
893 F.2d 787 (5th Cir. 1990) ............................................................................. 12

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.,*
No. 2:16-CV-134-JRG, 2017 WL 2869344 (E.D. Tex. Apr. 20, 2017) ............... 8

*GREE, Inc. v. Supercell Oy,*
No. 2:19-CV-00070-JRG, 2020 WL 4288356 (E.D. Tex. July 27, 2020) ............. 8

*Longhorn HD LLC. v. NetScout Sys., Inc.,*
No. 2:20-CV-00349-JRG, 2022 WL 991696 (E.D. Tex. Mar. 31, 2022) ............. 6

*Longitude Licensing Ltd. v. BOE Tech. Grp. Co.,*
No. 2:23-CV-00515-JRG, 2025 WL 2029871 (E.D. Tex. July 21, 2025) ........... 6, 8

*Majestic Oil, Inc. v. Certain Underwriters at Lloyd's, London,*
No. 21-20542, 2023 WL 2549892 (5th Cir. Mar. 17, 2023) ............................... 9

*MarcTec, LLC v. Johnson & Johnson,*
664 F.3d 907 (Fed. Cir. 2012) ............................................................................. 5

*Noskowiak v. Bobst SA,*
No. 04-C-0642, 2005 WL 2146073 (E.D. Wis. Sept. 2, 2005) ........................... 3

*Oyster Optics, LLC v. Cisco Sys., Inc.,*
No. 2:20-CV-00211-JRG, Dkt. 239 (E.D. Tex. Dec. 13, 2021) ........................... 3

*Patterson v. Houston Indep. Sch. Dist.*,
570 F. App'x 367 (5th Cir. 2014) ............................................................................9, 11

*Rawlplug Co. v. Illinois Tool Works, Inc.*,
11 F.3d 1036 (Fed. Cir. 1993) ..........................................................................................2

*Roussell v. Brinker Int'l, Inc.*,
No. 05-3733, 2008 WL 2714079 (S.D. Tex. July 9, 2008) ................................................3

*SobrinoBarrera v. Anderson Shipping Co.*,
495 F. App'x 430 (5th Cir. 2012) ...............................................................................9, 11

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) .........................................................................................5

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
670 F. Supp. 2d 737 (N.D. Ill. 2009) ...............................................................................3

## Other Authorities

Fed. R. Civ. P. 26(a), (e) ..........................................................................................................7

## I.    *Daubert* Motion Regarding Dr. Arnold's Opinions Concerning SKn's Burden to Prove Infringement

Dr. Arnold improperly opines that SKn's burden to prove infringement goes beyond what is required under the correct legal standard. According to Dr. Arnold, proving each accused product meets each limitation of the asserted claims is not enough—SKn must also prove *each point* on *each roll* of Defendants' copper foils falls within the claim scope. Dr. Arnold further seeks to impose upon SKn an affirmative duty to physically test each and every product sample produced in this litigation as a prerequisite to proving infringement. These opinions are based on incorrect legal standards, are unreliable and unhelpful to the jury, and should be excluded.

There are three accused products currently at issue in this case: (1) BF-PLSP-6μm, (2) SR-PLSP-6μm, and (3) BF-PLSP-8μm.[1] SKn's expert, Dr. Quinn Horn, tested physical samples of each accused product according to the testing protocols set forth in the Asserted Patents, and found each accused product meets each limitation of the asserted claims. For example, in measuring the surface roughness values of the accused products, Dr. Horn took measurements at three randomly-selected points and calculated their average value, as instructed by the Asserted Patents. *See, e.g.*, U.S. Patent No. 10,480,090 at claim 1 ("wherein the peak count roughness Rpc … is *an average* of peak count roughness Rpc values *measured at randomly-selected three points*.") (emphasis added). The average values from Dr. Horn's testing all fall within the claimed ranges.

In his rebuttal report, Dr. Arnold opines that Dr. Horn had not met the burden to prove infringement. According to Dr. Arnold, a showing of infringement requires proving that *every point* on *every roll* of copper foil Defendants have sold in the U.S. meets each claim limitation.

---

[1]    After fact discovery had closed, Defendants produced samples of two additional products (████████ and HTS-PLSP). Analysis regarding those products is ongoing and SKn reserves its right to supplement its expert report to address them.

Dr. Arnold estimates that Dr. Horn had only tested "███████████████ ████ ████ ███████████████ ██ ████████████ ██████████████████████ of Defendants' copper foils, and accuses Dr. Horn of failing to do what is required to prove infringement. Ex. 2 ¶ 56 (emphasis added). In furtherance of that opinion, Dr. Arnold claims that SKn must also test each physical sample Defendants produced during the course of litigation to prove infringement. *Id.* ¶ 57.

Dr. Arnold's opinions are based on incorrect legal standards. It is well established that, to prove infringement, the patentee needs to show that each accused product satisfies each limitation of the asserted claim. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 724 (Fed. Cir. 2002). Where the asserted claims set forth requirements regarding the average value of measurements taken at ***three randomly-selected points***, SKn is only obligated to measure three randomly-selected points to determine infringement. SKn bears no additional burden to prove that ***every point*** of ***every roll*** of copper foil Defendants have sold in the U.S. also falls within any of the claimed ranges. Imposing a duty to conduct such laborious testing is warranted by neither case law nor the asserted claims. *See Rawlplug Co. v. Illinois Tool Works, Inc.*, 11 F.3d 1036, 1044 (Fed. Cir. 1993) (reversing finding of no literal infringement and finding that the district court improperly imposed onto patentee the burden to prove restrictions not found in the asserted claims).

Dr. Arnold's assertion that SKn is somehow obligated to test every product sample Defendants produce is similarly misconceived, because there is plainly no such requirement in patent law. Nor does the assertion make sense—by Dr. Arnold's logic, an accused infringer can defeat infringement allegations simply by producing a large quantity of product samples that are too many to test. Moreover, the samples Dr. Horn purportedly failed to test (which he in fact did test and confirmed infringement) are of the ***same*** product (BF-PLSP-8μm) as the samples he tested

and relies upon for infringement. Dr. Arnold's opinions command SKn to do more than what is required to prove infringement. Those opinions should be excluded.

It is well known that experts may not offer legal opinions in the guise of expert testimony. *See, e.g., Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge."). Here, in particular, the legal standard Dr. Arnold advocates is incorrect as a matter of law. Dr. Arnold's opinions may mislead the jury into believing that SKn must do more to prove infringement than what is required. As this Court has advised, the use of "an incorrect legal standard" "ultimately renders [an expert's] opinions unsupported, potentially confusing to the jury, and highly prejudicial …." *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG, Dkt. 239 at 6 (E.D. Tex. Dec. 13, 2021). *See also Roussell v. Brinker Int'l, Inc.*, No. 05-3733, 2008 WL 2714079, at *27 (S.D. Tex. July 9, 2008) ("[T]o the extent that Dr. Lynn's assessment … is based on an incorrect legal standard, there is a substantial risk that his testimony will confuse issues, and should thus be excluded …."); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 745 (N.D. Ill. 2009) ("Having applied the incorrect legal standard … , Davis will not be permitted to testify on that topic."); *Noskowiak v. Bobst SA*, No. 04-C-0642, 2005 WL 2146073, at *5 (E.D. Wis. Sept. 2, 2005) ("Testimony based on an incorrect legal standard may confuse the jury, and may be proscribed by the Court …."). Dr. Arnold's flawed opinions should likewise be excluded.

Dr. Arnold's opinions and testimony regarding SKn's burden of proof, including paragraphs 55-60, 65, 91, 107, 126, 135 of his rebuttal report (Ex. 2), should be struck and excluded.

## II.    *Daubert* Motion Regarding Dr. Arnold's Opinions that Misapply the Court's Construction of "Rz" in Claim 1 of the '689 Patent

When addressing claim 1 of U.S. Patent No. 10,811,689 (the "'689 Patent"), Dr. Arnold contends the term "Rz" may refer to *either* RzJIS *or* RzDIN, contrary to the Court's Claim Construction Order rejecting Defendants' indefiniteness argument and finding that a POSITA would have interpreted Rz to refer to RzDIN. Dr. Arnold's opinions misapply the Court's claim construction rulings and should be excluded.

Claim 1 of the '689 Patent recites: "each of the first and second surfaces has a surface roughness (Rz) of 3.5 µm or less." U.S. Patent No. 10,811,689 at claim 1. During claim construction, Defendants and Dr. Arnold argued that claim 1 was indefinite, on the basis that a POSITA would not have understood whether Rz refers to RzDIN or RzJIS. Dkt. 92 at 14-16; Dkt. 92-1 ¶¶ 65-77. In its Claim Construction Order, the Court not only rejected Defendants' indefiniteness argument, but adopted SKn's position that a POSITA would have interpreted "Rz" in claim 1 of the '689 Patent to refer specifically to *RzDIN*. Dkt. 112 at 37 ("The specification twice refers to 'U.S. standard ASME B46.1-2009,' … and *Defendants' expert acknowledges that 'ASME B 46.1 (2009) defines 'Rz' consistently with Rz(DIN)*.'") (citing '689 Patent at 4:16–17 & 7:47–51) (emphasis added). The Court further observed, "Defendants' expert also agrees that the priority date for the '689 Patent is in 2016 and that it was 'likely' that *a person of skill in the art would have understood that RzDIN was the appropriate standard for measuring 'Rz' at that time*, in 2016." *Id.* (emphasis added).

Despite the Court's unambiguous rulings, Dr. Arnold continues to contend that both RzJIS and RzDIN are reasonable interpretations of the term "Rz" in claim 1 of the '689 Patent, and opines that the prior art would render claim 1 of the '689 Patent invalid if Rz referred to *RzJIS*. Ex. 1 ¶¶ 384, 549. Dr. Arnold expressed the same position during deposition, insisting that the Court had

not ruled on this issue and that Defendants were still permitted to argue both interpretations were acceptable. Ex. 3 at 203:23-204:11 ("Q. Do you recall during claim construction, defendants argued that a person of ordinary skill would not have known whether 'Rz' stands for 'RzDIN' or 'RzJIS'? A. So I'm trying to recall. I think you are correct that I believe that I contended that it's not clear which one it's referring to. Q. And again, the Court rejected that argument, right? A. *Well, I'm not sure that it rejected the argument.* It just sort of said it's just the plain and ordinary meaning of Rz. *I don't think it said yea or nay on which one to use.*") (emphasis added), 204:16-205:1 ("Q. Now, based on your understanding, does 'Rz' here refer to 'RzDIN' or 'RzJIS'? A. Well, I mean, *I think it could refer to either. I think both are legitimate measurements for Rz.* Q. So you're saying you still don't know which one it is? A. I'm saying that they're both legitimate measurements for Rz. *And you know, I think either one, somebody would be fair to use one or the other*.") (emphasis added), 207:4-8 ("Q. Do you think the Court's order leaves open the possibility that 'Rz' in Claim 1 of the '689 patent refers to 'RzJIS'? A. *I believe there still is some opening in that. I believe there is*.") (emphasis added).

These opinions advance claim construction positions that the Court expressly rejected. A court may properly strike expert testimony "when such testimony is based on a claim construction that is materially different" from the court's construction. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (citations omitted); *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) (holding that opinions that contradict a court's constructions should be excluded). As the Federal Circuit noted, when an expert fails to apply the constructions proposed by the parties, his opinions are "suspect" and should be excluded. *Treehouse Avatar LLC*, 54 F.4th at 715.

Paragraphs 384, 549 of Dr. Arnold's opening report (Ex. 1), which embody these opinions, should be struck and excluded.

## III.    *Daubert* **Motion Regarding Dr. Arnold's Opinions that Misapply the Court's Construction of "Rz" in Claim 1 of the '706 Patent**

In his opening report, Dr. Arnold expressly offers opinions that contradict the Court's claim construction of "Rz" in claim 1 of U.S. Patent No. 11,591,706 (the "'706 Patent"), stating that such opinions would apply "[t]o the extent the Court were to revise its construction." Ex. 1 at nn. 488, 490, 554, 555; Ex. 2 at nn. 95, 99. These opinions are unreliable and unhelpful to the jury.

In its Claim Construction Order, the Court held, "[t]he '706 Patent thus defines 'Rz' as being 'RzJIS' for purposes of the '706 Patent." Dkt. 112 at 36. Dr. Arnold acknowledges the Court's construction (Ex. 1 ¶¶ 425, 435, 589, 598), but nonetheless renders a series of opinions interpreting Rz as RzDIN "[t]o the extent the Court were to revise its construction," in violation of the Court's construction. Ex. 1 at nn. 488, 490, 554, 555; Ex. 2 at nn. 95, 99.

The Court has already rejected Defendants' objections to the Claim Construction Order. Dkt. 124. There is no reason for the Court to revise its construction of Rz in claim 1 of the '706 Patent at this juncture. Dr. Arnold's opinions expressly misapplying the Court's construction, namely footnotes 488, 490, 554, 555 of his opening report (Ex. 1) and footnotes 95, 99 of his rebuttal report (Ex. 2), should be struck and excluded.

## IV.    **Motion to Exclude Dr. Arnold's Untimely Disclosed Opinions Regarding Non-Infringing Alternatives**

Defendants bear the burden of establishing acceptable and available non-infringing alternatives ("NIAs"). *Longitude Licensing Ltd. v. BOE Tech. Grp. Co.*, No. 2:23-CV-00515-JRG, 2025 WL 2029871, at *5 (E.D. Tex. July 21, 2025) ("opinions regarding NIAs should be in Defendant's opening report"); *see also Longhorn HD LLC. v. NetScout Sys., Inc.*, No. 2:20-CV-00349-JRG, 2022 WL 991696, at *4 (E.D. Tex. Mar. 31, 2022) (a reliable expert opinion on NIAs

"is incomplete without opining whether the product is both 'available' and 'acceptable'"). But Defendants failed to timely provide pertinent information and analysis regarding their alleged NIAs; such information was impermissibly withheld until Defendants served Dr. Arnold's rebuttal report. Defendants' untimely disclosure has prejudiced SKn, and thus should be struck and excluded.

Throughout discovery, Defendants failed to fulfill their obligation under FRCP 26 to fully disclose their alleged NIAs. *See* Fed. R. Civ. P. 26(a), (e). Defendants did not disclose any alleged NIAs in their initial response to SKn's Interrogatory No. 6, nor prior to the May 7 and 8 deposition of Sangboem Kim, Volta's 30(b)(6) witness on NIAs. *See* Ex. 6 at 30-31. Over a month after Kim's deposition, at the close of fact discovery, Defendants provided for the first time vague descriptions naming their alleged NIAs. *Id.* at 31-33. But their response was devoid of any analysis as to the acceptability of the alleged NIAs, it didn't provide any evidence to support their assertion that the mobile device foils were commercially available, nor did it even attempt to assert that the five patent-specific alternatives could or would have been commercially available. *Id.* Dr. Arnold's opening report didn't shed much additional light on Defendants' position: he provided only conclusory assertions that the alleged NIAs would have been commercially available and acceptable. *See* Ex. 1 § XV.

Only Dr. Arnold's rebuttal report revealed his detailed analysis regarding the acceptability and availability of Defendants' alleged NIAs. In his rebuttal, Dr. Arnold disclosed his theory that CFL foils would have been acceptable because CFL provided copper foils as thin as 8 microns in 2003, providing sources that were not cited anywhere in his opening report. Ex. 2 ¶ 171. Dr. Arnold

further disclosed, for the first time,[2] the characteristics of mobile device foils that would make them "acceptable" alternatives. Ex. 2 ¶ 175. Finally, regarding his patent-specific alternatives, Dr. Arnold disclosed in his rebuttal new evidence and detailed information supporting his prior conclusory assertions that these alternatives would be "acceptable" and "available." *Id.* ¶ 177 (¶ 177a: ████████████████████████████████████████████

████████ ¶ 177b: foils outside the Rpc/pc range would be acceptable because ████████

████████████████████████████████ ¶ 177d: █████████████████

████████████████████████████████████████

　　Dr. Arnold's untimely disclosure precludes any opportunity for SKn's expert, Dr. Horn, to analyze Dr. Arnold's conclusions or address the evidence Defendants now assert supports the availability and acceptability of their alleged NIAs. *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00070-JRG, 2020 WL 4288356, at *3 (E.D. Tex. July 27, 2020). SKn is "clearly prejudiced by [Defendants'] failure to disclose this information." *Id.* (striking undisclosed information regarding implementation and cost of NIAs). *See also Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG, 2017 WL 2869344, at *3 (E.D. Tex. Apr. 20, 2017) ("Defendants cannot … delay the disclosures of non-infringing alternatives to the detriment of [Plaintiff], without prejudicing its own expert."). Dr. Arnold's untimely NIA analysis should have been raised in his opening report, not his rebuttal. *See Longitude Licensing Ltd.*, 2025 WL 2029871, at *5. Accordingly, Dr. Arnold's opinions and testimony regarding the acceptability and availability of NIAs, including paragraphs 171, 175, and 177 of his rebuttal report (Ex. 2), should be struck and excluded.

---

[2]  While Dr. Arnold notes in his rebuttal that he "summarized" this information in his opening report, he only cites Appendices containing raw data, not referenced anywhere in the NIA section of his opening report. Ex. 2.

V.    **Motion to Exclude Dr. Arnold's Reliance on Testing Results Not Disclosed During Fact Discovery**

In his opening and rebuttal reports, Dr. Arnold relies on testing data of alleged prior art and accused foils that were not disclosed during fact discovery. Due to Defendants' untimely disclosure of the underlying data, SKn was deprived of the opportunity to adequately assess the reliability of the data and its potential impact on issues of infringement and validity during fact discovery. Defendants have no justification for their untimely disclosure. Dr. Arnold's opinions relying on the late-produced data are highly prejudicial and should be stricken.

A.    **Legal Standard**

"District courts consider four factors when determining whether to exclude expert evidence as a sanction for the violation of a scheduling order." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (citation omitted). The factors include: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing the [information]; and (4) the availability of a continuance to cure such prejudice." *Majestic Oil, Inc. v. Certain Underwriters at Lloyd's, London*, No. 21-20542, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (brackets in original). A party's failure to provide any justification for its untimely disclosure weighs heavily in favor of striking the disclosure, and may even be sufficient standing alone to support exclusion. *SobrinoBarrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012); *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 370 (5th Cir. 2014) (collecting cases affirming exclusions of expert opinions where no justification for untimeliness was offered).

### B.    Factual Background

### CFL-10 and CFL-12

Both CFL-10 and CFL-12 are alleged prior art foils made by CFL, a subsidiary of Defendant Solus. *See* Ex. 1 ¶ 105. Defendants' counsel received the CFL-12 sample on or around **April 3, 2024**, and have held it in their possession since then. *Id.* ¶ 125(d). Defendants' counsel have had possession of the CFL-10 sample since at least **April 29, 2025**, when Michel Streel, a former CFL employee, brought a binder containing the sample to Defendants' counsel's offices.

On June 4, 2025, Defendants served their supplemental invalidity contentions. In Defendants' June 4 contentions, the "Attachment of Chromate (mg/m2)" and "Binding Coefficient" values—claimed properties of U.S. Patent No. 11,346,014 (the "'014 Patent")—were missing for both the CFL-10 and CFL-12 samples, and instead indicated with placeholders saying "forthcoming." Ex. 4 (CFL-12); Ex. 5 (CFL-10). By the time fact discovery closed on June 18, 2025, Defendants had still not disclosed the data. On July 10, 2025, the data were disclosed for the first time in Dr. Arnold's opening report. Ex. 1 ¶¶ 571, 572. According to Dr. Arnold, the testing data for both CFL-10 and CFL-12 fall within the claimed range, and both samples anticipate claim 1 of the '014 Patent. *Id.*

### Samples of Accused Product BF-PLSP-8μm

In Dr. Arnold's July 28, 2025 rebuttal report, he cites testing data of VOLTA-SAMPLE-021 to -026, samples of accused product BF-PLSP-8μm, that were never disclosed during fact discovery. Ex. 2 ¶¶ 98, 114. According to Dr. Arnold, these data fall outside of the claimed ranges and show that the BF-PLSP-8μm product purportedly does not infringe the '090 and '689 Patents.

### C.    Argument

All four factors favor excluding Dr. Arnold's opinions based on the untimely disclosed data.

*First*, Defendants have no justification for failing to disclose the underlying data during fact discovery. As to the testing data of the CFL foils, by the time fact discovery closed on June 18, 2025, Defendants had kept in their possession the CFL-10 sample for *over seven weeks* and the CFL-12 sample for *over a year*. Indeed, "CFL Samples" were identified as "Prior Art Devices" in Defendants' initial invalidity contentions dated August 23, 2024, so Defendants had long been aware of the relevance and importance of the testing data of the CFL samples, and had no reason to wait until the service of opening expert reports to produce the data.

As to the testing data of the accused product samples, Defendants' untimely disclosure is even less justified. The samples at issue are of Defendants' *own product*, to which Defendants have had access since the initiation of this lawsuit. The BF-PLSP-8μm product was named as an accused product in SKn's initial infringement contentions dated May 29, 2024, so Defendants must have known that any testing data supporting their alleged non-infringement of that product would be relevant and must be produced. There is no justification for waiting to disclose the testing data for the first time in Defendants' rebuttal expert report. This factor alone warrants the exclusion of Dr. Arnold's reliance on the late-disclosed data. *See SobrinoBarrera*, 495 F. App'x at 433; *Patterson*, 570 F. App'x at 370.

*Second*, the testing data have limited importance. The Fifth Circuit has commented that the less important the testimony, the more the factor weighs in favor of excluding its late disclosure. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

The CFL foils are among numerous other prior art references Defendants rely upon, including other prior art foils. *See* Ex. 1 § X. Defendants must have deemed those other prior art foils more important, because the testing data of those foils were produced along with Defendants' February 18, 2025 invalidity contentions, four months before fact discovery closed. Defendants'

choice to prioritize those other prior art references underscores the low importance of the CFL foils.

The testing data of the BF-PLSP-8μm samples also lack importance. As discussed in Section I, Dr. Arnold has no substantive rebuttal to the testing data Dr. Horn relies on to prove infringement. Dr. Arnold instead forms his non-infringement opinion based on the late-disclosed testing data of *other* rolls of the same product, in furtherance of the notion that SKn must test every roll in order to prove infringement. In other words, the late-disclosed testing data only serve to support Dr. Arnold's opinions based on an incorrect legal standard, and bear no importance to issues of infringement if the correct legal standard is applied.

The Fifth Circuit has recognized that it has taken inconsistent approaches when applying this factor. *Betzel*, 480 F.3d at 707. Specifically, in a 1990 decision, the court held that any alleged importance of the expert testimony at issue underscores the need for timely disclosure and thus favors exclusion. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Nonetheless, the court has emphasized that "the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Betzel*, 480 F.3d at 708. Even assuming *arguendo* that Dr. Arnold's opinions are important to Defendants' case, this factor does not singularly override the other factors, which all favor exclusion.

***Third***, SKn would be significantly prejudiced if Dr. Arnold is permitted to rely on the late-disclosed data. SKn was not afforded any opportunity to assess the accuracy or reliability of the late-disclosed data during fact discovery. Particularly with respect to the testing data of the BF-PLSP-8μm samples, SKn's expert was deprived of any opportunity to address the data, because the data were presented for the first time in Dr. Arnold's ***rebuttal*** report. This Court has excluded expert opinions under similar circumstances. *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP,

2015 WL 11089607, at *2 (E.D. Tex. June 4, 2015) (excluding opinions based on data disclosed for the first time in rebuttal expert report).

*Fourth*, no continuance is available to cure such prejudice. Remedying these issues would likely involve "needing adequate time to analyze the [] information previously withheld," "preparing a new infringement report to address the technical information," "preparing new rebuttal [] Report[s]," "depositions of expert witness[] regarding the[] new reports," and "additional motion practice." *Freeny*, 2015 WL 11089607, at *2.

Accordingly, all four factors favor excluding Dr. Arnold's opinions that rely on the untimely disclosed testing data. Paragraphs 571, 572 of his opening report (Ex. 1) and paragraphs 98 and 114 of his rebuttal report (Ex. 2) should be struck and excluded.

## VI.   CONCLUSION

For the foregoing reasons, SKn respectfully requests that the Court issue an order striking Dr. Arnold's opinions set forth in paragraphs 384, 549, 571, 572, footnotes 488, 490, 554, 555 of his opening report, paragraphs 55-60, 65, 91, 98, 107, 114, 126, 135, 171, 175, 177, footnotes 95, 99 of his rebuttal report, and related testimony.

Dated:  August 8, 2025

Respectfully submitted,

*/s/ Deron R. Dacus*

Deron R. Dacus
Texas Bar No.  00790553 Email:
ddacus@dacusfirm.com
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430 Tyler, TX 75701
Phone: (903) 705-1171
Fax: (903) 581-2543

D. James Pak
djamespak@quinnemanuel.com
David M. Elihu
davidelihu@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

David A. Nelson
davenelson@quinnemanuel.com
Brianne M. Straka
briannestraka@quinnemanuel.com
Harrison B. Rose
harrisonrose@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Sean Pak
seanpak@quinnemanuel.com
Kevin (Gyushik) Jang
kevinjang@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Tel: (415) 875-6600
Fax: (415) 875-6700

*Counsel for Plaintiff SK nexilis Co., Ltd.*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Plaintiff conferred with counsel for Defendants, and this motion is opposed.


Dated: August 8, 2025                    */s/ Harrison B. Rose*
                                         Harrison B. Rose

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on August 8, 2025, and a copy of this sealed document, in its entirety, via electronic mail.

Dated: August 8, 2025                              */s/ Harrison B. Rose*
                                                              Harrison B. Rose

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 62) entered in this case on October 8, 2024.


Dated: August 8, 2025                    */s/ Harrison B. Rose*
                                         Harrison B. Rose