**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SK NEXILIS CO., LTD., | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| SOLUS ADVANCED MATERIALS | § | |
| CO., LTD., VOLTA ENERGY | § | CASE NO. 2:23-CV-00539-JRG- |
| SOLUTIONS S.A.R.L., VOLTA | § | RSP |
| ENERGY SOLUTIONS EUROPE KFT., | § | |
| VOLTA ENERGY SOLUTIONS | § | |
| HUNGARY KFT., *and* VOLTA | § | |
| ENERGY SOLUTIONS CANADA INC., | § | |
| *Defendants.* | § | |
| | § | |

**MEMORANDUM ORDER**

Before the Court are Plaintiff SKN's Motion to Exclude the Opinions and Testimony of Dr. Craig Arnold ("Original Motion"), **Dkt. No. 147**, Motion to Exclude the Supplemental Opinions and Testimony of Dr. Craig Arnold ("Supplemental Motion"), **Dkt. No. 271**, and Defendants' Motion to Strike Portions of SKN's Draft Testing Exhibit PTX-23 That Contain Tests That Were Not Included in Any Expert Report ("Testing Motion"), **Dkt. No. 331**. The Original Motion is fully briefed, Dkt. Nos. 184, 200, 217, as is the Supplemental Motion, Dkt. Nos. 280, 285, 291. The Testing Motion is ripe. Dkt. Nos. 338, 342. During an April 2, 2026, hearing on the Testing Motion and a related portion of the Original Motion, the Court carried the issues to be addressed alongside the other Motions addressed in this Order. SKN seeks exclusion of Dr. Arnold's opinions under *Daubert*, and the Parties seek exclusion of late-disclosed testing data related to certain samples. For the reasons set forth below, the

Court denies the Motions to strike or exclude evidence but orders certain steps to remedy possible prejudice.

## I.      LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("a judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's

2

role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "even if testimony is reliable, it may still be excluded if it relies on information that violates the rules" of Civil Procedure. *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023). If a party fails to make disclosures as required under Rule 26(a), or under a Discovery Order pursuant to Rule 26(f), the Court may issue a sanction "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanctions available to the Court include precluding the party from using the withheld information or witness, ordering the payment of reasonable expenses and attorneys' fees, informing the jury of the party's failure, or imposing "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed.

R. Civ. P. 37(c)(1)(A)–(C). Those orders include "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). To determine whether a failure to disclose was substantially justified or harmless, courts consider four factors: (1) the importance of the matter that was not disclosed; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice with a continuance; and (4) the explanation for the party's failure to disclose. *See CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009); *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004).

## II.    DISCUSSION

### A.  Dr. Arnold's Opinions on Adequacy of SKN's Testing (Dkt. Nos. 147, 271)

SKN requests exclusion of Dr. Arnold's opinions disclosed in his rebuttal and supplemental rebuttal expert reports concerning the representativeness of SKN's expert's, Dr. Horn's, testing of Defendants' foil samples. Dkt. No. 147 at 1–3; Dkt. No. 200 at 1–2; Dkt. No. 271 at 2–6; Dkt. No. 285 at 1–5. SKN characterizes Dr. Arnold as incorrectly asserting that Dr. Horn's testing must prove "that every point on every roll" falls within the claim scope, whereas the claims only require testing at three random points. Dkt. No. 147 at 1–2. SKN complains about Dr. Arnold's estimation that Dr. Horn only tested about 0.18 $mm^2$ of the 74,458,471 $mm^2$ total sampling area available, which Dr. Arnold allegedly opines is not representative. Dkt. No. 147 at 2; Dkt. No. 207 at 2–3. SKN argues that these opinions venture into offering legal opinions and improperly ratchet up the burden of proof. Dkt. No. 147 at 2–3; Dkt. No. 207 at 3–4.

While SKN's Supplemental Motion largely tracks these arguments, a few additional ones are made therein. Dkt. No. 207 at 4–6. SKN argues that Dr. Arnold's opinions about

the number of tested sheets are unreliable because he did not know how many sheets were tested and Dr. Arnold himself did not test all of them. *Id.* at 4–5. SKN argues that the Court's refusal to exclude Dr. Arnold's related opinions about Dr. Horn's failure to test a later produced batch of sheets would improperly reward Defendants for their late production. *Id.* SKN finally argues that Dr. Arnold's opinion that "different rolls are . . . different and must be individually tested" cannot survive his admissions that one of the goals of the asserted inventions is "to make things uniform and repeatable. *Id.* at 5–6 (relying on *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, 2020 WL 5658779, at *4 (E.D. Tex. Sept. 23, 2020)).

Defendants argue that SKN mischaracterizes Dr. Arnold's "appropriate" opinions, and he has not imposed "an affirmative duty to physically test . . . every product sample produced . . . to prove infringement." Dkt. No. 184 at 2. Defendants state that Dr. Arnold has not challenged that "testing of three random points on a copper foil can be sufficient to prove" infringement and has in fact sampled three random points for his own testing. *Id.* at 3. Defendants state they produced eleven rolls. *Id.* Defendants allege that Dr. Horn only tested five, one of which did not satisfy the claims. *Id.* at 2. The other six that Dr. Arnold tested also allegedly failed. *Id.* at 2–3. Defendants argue that Dr. Arnold, then, properly opined that the testing he did "casts serious doubt on the reliability of Dr. Horn's testing" and SKN failed to prove infringement because Dr. Horn did not "test all of the sheets" or offer "any explanation as to why his testing . . . can be extrapolated to other rolls he has not tested." *Id.* at 3. As to the number of sheets and rolls, Defendants argue that Dr. Arnold was not required to test them all because representativeness is not an issue for invalidity. Dkt.

No. 280 at 5. Defendants also argue that such opinions are proper because Dr. Horn's testing "show[s] variability between different measurements on the same accused products and even the same sample, further demonstrating [his] testing is not representative." *Id.* at 4.

Having fully reviewed the cited portions of Dr. Arnold's report and the briefing, the Court finds that his representativeness opinions as disclosed in his rebuttal and supplemental rebuttal reports are sufficiently reliable to survive *Daubert*. SKN's best case, *American Technical Ceramics*, is not helpful. In that case, a defendant challenged a plaintiff's technical expert's opinions based on his testing of a small sample size of units as not sufficiently reliable for failure to be representative of all infringing units. 2020 WL 5658779 at *4. The posture here is different: Plaintiff SKN challenges *Defendants' expert's opinion* that SKN's testing of a small sample size of foils is not representative. That court's reasoning on why it did not exclude the plaintiff's testing data based on representativeness does not cleanly apply to this Court's consideration of whether Defendants' expert should be precluded from making representativeness arguments more generally. SKN has cited no authority convincing this Court that exclusion of Dr. Arnold's representativeness opinions is proper, and the Court is not otherwise persuaded.

Accordingly, the Court finds that the Supplemental Motion (Dkt. No. 271) and the portion of the Original Motion (Dkt. No. 147) directed to Dr. Arnold's representativeness opinions is **DENIED**.

B.  Dr. Arnold's Opinions on Rz (Dkt. No. 147)

SKN argues, with respect to two asserted patents, that Dr. Arnold's opinions are inconsistent with the Court's claim construction. Dkt. No. 147 at 4–6. SKN first argues that

certain opinions of Dr. Arnold are inconsistent based on its understanding that "the Court . . . adopted SKN's position that a POSITA would have interpreted 'Rz' in claim 1 of the '689 Patent to refer specifically to RzDIN." Dkt. No. 112 at 4. However, the Court did not so hold. Against the backdrop of Defendants' indefiniteness arguments, the Court explained that, because "the specification twice refers to . . . ASME B46.1-2009" and "Defendants' expert acknowledges that [that standard] defines 'Rz' consistently with Rz(DIN)," Defendants' arguments about the ambiguity of Rz were unpersuasive "particularly in light of the burden being on Defendants by clear and convincing evidence" to prove indefiniteness. Dkt. No. 112 at 37. The Court instead found that the '689 Patent "refer[ed] generically to 'Rz,'" and did not limit it to Rz(DIN). Defendants had produced insufficient evidence regarding materially different outcomes between any different meanings, and the Court therefore found no further construction than "plain meaning" necessary. *Id.* at 37, 39. The Court thus finds SKN's first argument unpersuasive.

Second, SKN argues that Dr. Arnold misapplies the Court's construction of the Rz term from the '706 Patent. Dkt. No. 147 at 6. In its Claim Construction Order, the Court unequivocally stated that "[t]he '706 Patent thus defines 'Rz' as being 'RzJIS.'" Dkt. No. 112 at 36. However, Dr. Arnold's opinions do not misapply the construction. Instead, he acknowledges that the Court construed Rz as RzJIS, and only offers inconsistent opinions "[t]o the extent the Court were to revise its construction." Arnold Op. Rep., Dkt. No. 147-2 ¶¶ 425, 435, 589, 598 & nn. 488, 490, 554, 555; Arnold Reb. Rep., Dkt. No. 147-3 ¶¶ 138 & nn. 95, 99. Defendants represent that such opinions will not be offered at trial unless the

Court modifies its construction. Dkt. No. 184 at 4. The Court therefore finds striking unnecessary.

Accordingly, the Court finds that the Original Motion (Dkt. No. 147) should be and hereby is **DENIED** to the extent it seeks to exclude Dr. Arnold's opinions that are allegedly inconsistent with the Court's constructions of the Rz terms in the '689 and '706 Patents.

C. Dr. Arnold's Opinions on Non-Infringing Alternatives ("NIAs") (Dkt. No. 147)

SKN complains that Dr. Arnold's opinions on NIAs were untimely disclosed under Rule 26 and should be excluded. Dkt. No. 147 at 6–8. SKN argues that any NIAs should have been disclosed with Dr. Arnold's opening report, but, while that report discussed various NIAs, it did not analyze commercial acceptability. Dkt. No. 200 at 3. SKN alleges that Dr. Arnold's opinions about the commercial acceptability of alternative thicknesses, features, bagginess, Rpc values, binding coefficients, and Rz/Ra ratios appeared for the first time in his rebuttal report. *Id.*; Dkt. No. 147 at 7–8. SKN argues that Defendants' late disclosure prejudiced it because Dr. Arnold's rebuttal report was served after it took the deposition of Defendants' designated witness on NIAs, Mr. Kim. Dkt. No. 147 at 7. SKN also argues its own expert, Dr. Horn, was deprived of the opportunity to address Dr. Arnold's commercial acceptability analysis. *Id.* at 8.

Defendants disagree with SKN's characterization of Dr. Arnold's opening report, and argue he properly analyzes commercial acceptability of alleged NIA foils. Dkt. No. 184 at 6–8; Dkt. No. 217 at 3 (citing Arnold Op. Rep., Dkt. No. 147-2 ¶¶ 105–27, 129–71, 304–446, 1316–17). Defendants argue that Dr. Arnold's new opinions concerning commercial acceptability were necessitated by Dr. Horn's own critical analysis of the NIAs "as to

features [Defendants'] customers allegedly required." Dkt. No. 217 at 3; Dkt. No. 184 at 6–8.

Having fully reviewed the cited portions of Dr. Arnold's opening and rebuttal report, Dr. Horn's opening report, and the briefing, the Court finds that Defendants timely disclosed their theories on NIAs and adequately supported such theories, as was their burden, in Dr. Arnold's opening report. Notably, SKN does not ask the Court to strike Dr. Arnold's theories as to the NIAs it admits he disclosed in opening, but only as to his new analysis of commercial acceptability. However, such feature-level analysis was directly in response to Dr. Horn's critique of the commercial acceptability of Defendants' proposed NIAs based on certain features Defendants' customers allegedly require.

Accordingly, the Court finds that the Original Motion (Dkt. No. 147) should be and hereby is **DENIED** to the extent it seeks to exclude Dr. Arnold's opinions in his rebuttal report concerning allegedly untimely disclosed NIAs.

D.  Late-Disclosed Testing Data (Dkt. Nos. 147, 331)

In the Original Motion, SKN seeks exclusion of Dr. Arnold's opinions relying on two categories of testing data: (1) AAS testing of CFL-10 and -12 foils used to compute a binding coefficient from the '014 Patent, and (2) testing of samples of an accused product, BF-PLSP-8μm. Dkt. No. 147 at 10. The Testing Motion overlaps with the second category. Relatedly, in it, Defendants seek exclusion of exhibit PTX-23, which contains SKN's testing data of BF-PLSP-8μm. Dkt. No. 331 at 1. The hearing only addressed BF-PLSP-8 μm testing data.

With respect to the AAS testing data, SKN alleges Defendants received the CFL-12 samples on April 3, 2024, and CFL-10 on April 29, 2025, and, when Defendants served their June 4, 2025, invalidity contentions, the binding coefficient values were missing with placeholders saying "forthcoming." Dkt. No. 147 at 10. SKN alleges these values were not disclosed until Dr. Arnold's opening report. *Id.* Defendants respond that the contentions stated that testing was ongoing, detailed how testing was conducted, and that the expected values were between 1.5 and 9.4, which is consistent with the results produced. Dkt. No. 184 at 8–9. Defendants argue that such testing normally takes place during expert discovery, which is allowed under the Second Amended Docket Control Order ("DCO"), and which is what happened here. *Id.* at 9 (citing Dkt. No. 118 at 4 n.5).

Concerning Defendants' BF-PLSP-8μm testing data, SKN alleges that Dr. Arnold disclosed for the first time his testing of samples 021 to 026 in his July 28, 2025, rebuttal report. Dkt. No. 147 at 10. This testing goes to noninfringement. *Id.* Defendants respond that this testing was done during the expert discovery period in response to Dr. Horn's "conspicuous failure" to address samples 021 to 026 in his opening report, despite his testing of them. Dkt. No. 184 at 11–12. Defendants again argue that their expert is permitted to perform rebuttal testing. *Id.* at 11.

Regarding SKN's BF-PLSP-8μm testing data, Defendants allege that SKN disclosed that it tested samples 015 to 020 for the first time on July 26, 2025, but did not rely on that testing in Dr. Horn's opening or rebuttal reports and has not served any report addressing these samples or offered any opinions on such testing. Dkt. No. 331 at 2. Defendants allege that they discovered this data in exhibit PTX-23 while preparing for trial. *Id.* at 3. Defendants

10

argue that such testing data cannot be used at trial because it is not part of any expert report, and that exclusion is the appropriate remedy for SKN's failure to disclose it. *Id.* at 3–6. SKN argues that the Court's DCO required Defendants to disclose testing by June 18, 2025, but they failed to disclose any testing until July 28, 2025 in Dr. Arnold's rebuttal report. Dkt. No. 338 at 5. SKN also argues that Defendants' reliance on their late-disclosed testing data of the BF-PLSP-8µm samples should open the door to SKN's reliance on its own testing of those same samples. *Id.* at 5–7. During the hearing, SKN's counsel clarified that the BF-PLSP-8µm samples 015 through 020 were cut from the same rolls as samples 021 through 026. Notably, SKN represents that, if Dr. Arnold is prohibited from using Defendants' testing data from samples 021 through 026, SKN will not use its own testing data of samples 015 through 020. *Id.* at 7.

As a preliminary matter, the Court does not find that Defendants waived objection to PTX-23 as SKN argued in its response. *Id.* at 4–5. Looking to the DCO at the center of all three disputes, the Parties agreed to "disclose final non-burden contentions on noninfringement and validity, in which they identify alleged deficiencies . . . with the other side's testing at a level of detail sufficient to put the other side on notice and attempt to remedy such deficiencies . . . in their opening expert reports." Dkt. No. 118 at 4 n.5. The Parties further agreed that such "rebuttal contentions should also include a description of the testing methodology . . . at a level that allows the other side to address any alleged deficiencies in their opening expert reports." *Id.* Rebuttal contentions were due June 18, 2025. *Id.* at 4. While this agreement does not explicitly require disclosure of data itself, like it does methodology, it does implicitly require disclosure of data related to noninfringement

(by Defendants) and validity (by SKN) ahead of the exchange of rebuttal contentions to allow the opposing party to "identify alleged deficiencies" in the data. Therefore, the AAS testing data and testing data on the BF-PLSP-8μm samples were disclosed late.

However, having fully considered and balanced the four factors, *CQ*, 565 F.3d at 280, the Court does not find exclusion to be the appropriate remedy in this instance. SKN was not sleeping on its rights with respect to the testing data of the BF-PLSP-8μm samples and the CFL-10 and -12. It timely sought to exclude Dr. Arnold's use of such testing data on August 8, 2025. Dkt. No. 147 at 10. However, the Court also agrees with Defendants' argument during the hearing that SKN should have timely moved for leave to serve their own testing data of the BF-PLSP-8μm samples. But Defendants should have also moved for leave to include such testing data in Dr. Arnold's rebuttal report and moved to exclude the testing data from PTX-23 earlier. Additionally, given the release of this case from the current trial setting, the Parties have sufficient time to address any prejudice with supplementation and deposition. The Court finds that the fairest result is to allow the jury to weigh both sides' testing data.

Accordingly, the Court finds that the Original Motion (Dkt. No. 147) and Testing Motion (Dkt. No. 331) should be and hereby are **DENIED**. However, the Parties are ordered below to take certain actions to cure any complained of prejudice.

### III.    CONCLUSION

For the reasons and to the extent provided above, the Original Motion (Dkt. No. 147), Supplemental Motion (Dkt. No. 271), and Testing Motion (Dkt. No. 331) are **DENIED**. In accordance with the Court's reasoning above, however, it is hereby

**ORDERED** that the Parties have seven (7) days to serve supplemental rebuttal reports of Drs. Horn and Arnold addressing SKN's testing of their BF-PLSP-8μm samples and Defendants' testing of their own samples and the CFL-10 and -12. It is

**FURTHER ORDERED** that, after such supplemental expert reports are served, the Parties have leave to conduct a three (3) hour deposition of the other side's expert limited to the new opinions disclosed in such supplements. It is

**FURTHER ORDERED** that Defendants may promptly stipulate to not using their BF-PLSP-8μm sample testing data, which—based on SKN's representation that they would not use their own testing data if Defendants did not—would moot the need for supplemental reports and depositions with respect to the BF-PLSP-8μm data.

**SIGNED this 7th day of April, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

13