**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SK NEXILIS CO., LTD., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| SOLUS ADVANCED MATERIALS CO., LTD., VOLTA ENERGY SOLUTIONS S.A.R.L., VOLTA ENERGY SOLUTIONS EUROPE KFT., VOLTA ENERGY SOLUTIONS HUNGARY KFT., *and* VOLTA ENERGY SOLUTIONS CANADA INC., | § § § § § § § § | CASE NO. 2:23-CV-00539-JRG-RSP |
| *Defendants.* | § § | |

**MEMORANDUM ORDER**

Before the Court are Defendants' Motion to Strike Portions of the Expert Reports of Dr. Quinn Horn ("Horn Motion"), **Dkt. No. 145**, Motion to Strike Portions of the Supplemental Expert Report of Dr. Quinn Horn ("Supplemental Horn Motion"), **Dkt. No. 270**, and Motion to Exclude Under *Daubert* and Strike Certain Expert Testimony of Ms. Lauren Kindler ("Kindler Motion"), **Dkt. No. 142**. All three are fully briefed. Dkt. Nos. 183, 203, 214; Dkt. Nos. 281, 286, 294; Dkt. Nos. 185, 201, 224. Plaintiff SKN has retained Dr. Horn as its technical expert, and Ms. Kindler as its damages expert. Defendants seek to exclude their opinions under *Daubert*. For the reasons set forth below, the Motions are denied.

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("a judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits"

(quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.    DISCUSSION

A.  Horn Motions (Dkt. Nos. 145, 270)

   *i.   Infringement Conclusions (Dkt. Nos. 145, 270)*

Defendants argue that Dr. Horn's infringement conclusions should be excluded because they are flawed. Dkt. No. 145 at 1–4; Dkt. No. 270 at 1–4. Defendants' reasoning treads similar ground to the briefing on SKN's motion to exclude the opinions of Dr. Arnold, which the Court denied. Dkt. No. 147 at 1–3; Dkt. No. 200 at 1–2; Dkt. No. 362 at 6. There, SKN argued that Dr. Arnold's opinions on the adequacy of SKN's testing were flawed because he concludes SKN's testing was not representative of all sampling areas, rolls, and sheets. Dkt. No. 147 at 1–3; Dkt. No. 200 at 1–2. Here, Defendants argue that Dr. Horn's opinions are flawed because he tested a small area and less than all the rolls, which fails to prove representativeness. Dkt. No. 145 at 1–4; Dkt. No. 270 at 1–4.

Although the Court found *American Technical Ceramics v. Presidio Components, Inc.*, No. 14-CV-6544, 2020 WL 5658779, at *4 (E.D.N.Y. Sept. 23, 2020), to be inapplicable to the exclusion of Dr. Arnold's opinions attacking representativeness, Dkt. No. 362 at 6, that case substantially supports that Dr. Horn's conclusions should not be excluded for an alleged lack of representativeness. 2020 WL 568779, at *4. Defendants argue that, unlike in that case, Dr. Horn admitted that he would expect different foil samples to have different properties, Dkt. No. 145 at 3, Dr. Arnold's testing shows Dr. Horn's testing is not representative, and Defendants never admitted that the samples Dr. Horn tested were representative, Dkt. No. 203 at 2–3.

Dr. Horn merely stated that he would not expect "*every roll* to have *exactly* the same properties." Dkt. No. 145-8 at 250:24–252:4. That there is *some* variability does not support that Dr. Horn's testing of a small sample size is not representative or is unreliable. Moreover, the court in *American Technical Ceramics* only relied in part on the defendant's representation that the samples it produced were representative. 2020 WL 5658779, at *4. Its finding that the plaintiff's expert reliably extrapolated his testing was based primarily on defendant's failure to cite any "authority for the proposition that a small sample size warrants exclusion by law," and such reasoning would "effectively require [the plaintiff's expert] to analyze all [samples of] the accused [products] to provide an admissible opinion." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, Dkt. No. 179 at 40–41 (E.D.N.Y. May 30, 2019). Defendants' argument that they have not conceded representativeness is thus not persuasive. Also, that Dr. Arnold's testing is inconsistent with Dr. Horn's testing is not a sufficient reason to exclude his opinions based on that testing. *See, e.g.*, *Newton v. State Farm Lloyds*, No. 4:21-CV-322, 2022 WL 2196314, at *5 (E.D. Tex. Apr. 13, 2022) ("An expert's opinion is not 'rendered inadmissible' when he disagreed with another's opinions and testing methods." (quoting *Browder v. State Farm Fire & Cas. Co.*, No. 1:20-CV-26, 2021 WL 2517681, at *7 (W.D.N.C. June 18, 2021))).

Defendants' reliance on *Technology Properties Ltd. LLC v. Canon Inc.*, No. 14-CV-03640-CW-DMR, 2015 WL 5118687, at *3 (N.D. Cal. Aug. 31, 2015) and *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 273–75 (W.D.N.Y. 2008) is also inapposite. *Canon* stands for the proposition that mapping one accused product to asserted claims does not accomplish notice of infringement with respect to other uncharted products, without some additional analysis on representativeness. 2015 WL 5118687, at *3–5. That proposition is plainly inapplicable to the present issue of whether Dr. Horn's infringement conclusions relying on testing of a small subset

of samples of a collection of products alleged to infringe (out of a much greater number of sheets, rolls, and surface area of the same products) are sufficiently reliable. Additionally, *Kodak* involved a court's fact-finding following a bench trial, not consideration of *Daubert* issues, so that court's weighing of representativeness is not persuasive. 560 F. Supp. 2d at 234. The approach taken in *American Technical Ceramics* is the correct one, and Dr. Horn's infringement conclusions are sufficiently reliable. Defendants' other arguments are unpersuasive. Accordingly, the Horn Motions (Dkt. Nos. 145, 270) are **DENIED** to the extent they seek to exclude Dr. Horn's infringement conclusions.

  ii. *Copying Opinions (Dkt. Nos. 145, 270)*

  Defendants argue that Dr. Horn's opinions that Defendants copied SKN's technology should be excluded for the following reasons: (1) he "merely parrots Volta documents" without any supporting analysis, which is improper, (2) copying is "well outside" of Dr. Horn's expertise, and (3) such opinions are based on "speculation" that Defendants must have copied if they closely monitored SKN's patent applications, foil products, and manufacturing technology. Dkt. No. 145 at 4–7; Dkt. No. 270 at 7–8. Defendants argue that copying evidence is discernable by a layperson and does not require expert testimony. Dkt. No. 145 at 5. Defendants rely on *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017). *Id.* Defendants also argue that, because all copying evidence post-dates Defendants' development of the accused products, Dr. Horn's opinions risk confusing the jury and prejudicing Defendants, "outweighing any minimal probative value" under Rule 403. *Id.* at 6–7; Dkt. No. 203 at 4.

  SKN argues that Dr. Horn's copying opinions go to secondary indicia of non-obviousness, not to willfulness or any other infringement issue. Dkt. No. 183 at 8–9 (citing Horn Op. Rep., Dkt. No. 183-2 § XII.D (discussing copying under the heading "Secondary Considerations of Non-Obviousness")). SKN argues that Dr. Horn's opinions on copying should not be excluded because

5

such indicia "must always when present be considered." *Id.* at 9 (quoting *Headwater Rsch. LLC v. Verizon Commc'ns, Inc.*, No. 2:23-CV-352, 2025 WL 179330, at *3 (E.D. Tex. June 23, 2025)). SKN argues that Dr. Horn does not parrot evidence, but "uses his technical expertise to connect the evidence to the claimed inventions by pointing out the properties of SKN's foils Defendants studied." *Id.* at 7–8 (citing Horn Op. Rp., Dkt. No. 182-3 ¶¶ 618, 620, 623). SKN argues this is proper for an expert under *Headwater*, 2025 WL 1739330, at *3. *Id.* at 8. SKN argues that Dr. Horn does not rely on Defendants' monitoring to infer copying but recites it only as background for his technical analysis. *Id.* (citing Horn Op. Rep., Dkt. No. 182-3 ¶¶ 614–24).

As SKN argues, *Sonos* is unhelpful because the expert's opinion in that case was based on the similarity of the names of a plaintiff's product and an accused product, on which the court held the jury could form its own opinions. 297 F. Supp. 3d at 521. Dkt. No. 183 at 8. Defendants do not dispute this characterization, or the applicability of *Headwater*. Dkt. No. 203 at 3–4. As this Court explained in *Headwater*, "a nexus between the copying and the novel aspects of the claimed invention must exist for copying to be given significant weight." 2025 WL 1739330, at *3 (quoting *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012)). Therefore, an expert "may rely on and offer opinions on secondary indicia so long as this evidence is tied to some product, feature, or technology that [the] plaintiff alleges embodies one or more asserted patents." *Id.* (citing *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33, 2016 WL 98745, at *2 (E.D. Tex. Jan. 8, 2016)).

While Dr. Horn relies on Defendants' monitoring for background, his opinions concern the nexus between the accused products and the claimed features of the asserted patents. *See, e.g.*, Dkt. No. 183-2 ¶ 623 ("I understand that Defendants revisited the test results . . . . The mechanical properties and the presence and amount of Cr on the surface of the copper foil are related to claimed

properties in some Patents-in-Suit."). Dr. Horn's opinions are thus relevant to obviousness. Moreover, as this Court previously found, factual disputes remain as to when the accused products were "developed," especially as to the recently developed MTS and HTS products, Dkt. No. 359 at 7, so the Court cannot rely on Defendants' argument that these foils were all fully developed before the evidence of copying. Dr. Horn's opinions are sufficiently reliable and admissible under *Daubert* and Rule 403. Accordingly, the Horn Motions (Dkt. Nos. 145, 270) are **DENIED** to the extent they seek to exclude Dr. Horn's opinions copying opinions.

### iii.  Doctrine of Equivalents Opinions (Dkt. No. 145)

Defendants argue that Dr. Horn's doctrine of equivalents opinions should be stricken. Dkt. No. 145 at 7. SKN argues that this portion of the motion is moot because SKN agreed to withdraw these opinions during a prior hearing. Dkt. No. 183 at 9. The Court agrees that the portion of the Horn Motion (Dkt. No. 145) concerning DOE should be and hereby is **DENIED** as moot.

### iv.  "Virgin Copper Foil" Opinions (Dkt. No. 145)

Defendants argue that Dr. Horn's opinion, in his rebuttal report, that the asserted patents are directed to "virgin copper foils" should be excluded. Dkt. No. 145 at 8. Virgin copper foils are those that have not been "extracted from an already manufactured (and used) battery." *Id.* (citing Horn Reb. Rep., Dkt. No. 145-7 ¶ 207). Defendants argue such opinions are not supported by the asserted patents, and amount to improper and untimely claim construction. *Id.*; Dkt. No. 203 at 5.

SKN alleges that Dr. Horn opines that "handling, storage, cell manufacturing, long term use and/or abuse of the cell, disassembly of the cell, [and] removal of coatings" impacts the roughness and mechanical properties of those foils such that Defendants' testing results for the purposes of invalidity of non-virgin foils extracted from smartphones and tablets does not reflect the virgin properties of those foils. Dkt. No. 183 at 9–10 (citing Horn Reb. Rep., Dkt. No. 145-7 ¶

207). SKN argues that Dr. Horn merely opines on a POSITA's understanding that, in context, the claims refer to virgin foils, which is not claim construction. *Id.* at 10.

Defendants' arguments are not persuasive. The specifications include extensive discussion of the manufacturing of the claimed foils. *See, e.g.*, '090 Patent at 6:65–9:14 (discussing how foils with the claimed properties are "formed," as well as the "production of" such foils). In view of Dr. Horn's opinion that a POSITA would understand that such use changes the properties of the foil, it is consistent that the claimed foils would be unused. Horn Reb. Rep., Dkt. No. 145-7 ¶ 207 ("A POSITA would understand that surface defects imparted to the foil due to . . . manufacturing [and] long term use . . . will impact the . . . properties . . . compared with virgin foil. . . ."). Moreover, this dispute relates to whether the used foils Defendants rely upon for invalidity are sufficiently analogous to the claimed foils, which is a question of fact, *In re Ethicon, Inc.*, 844 F.3d 1344, 1349 (Fed. Cir. 2017), not of claim construction. In sum, Dr. Horn is not offering claim construction opinions but is opining on what a POSITA would understand about the claimed foils, as distinguished from the foils Defendants rely on for invalidity, to rebut their invalidity case, which is permissible. Thus, the Horn Motion (Dkt. No. 145) is **DENIED** to the extent it seeks to exclude Dr. Horn's opinions on virgin foils.

> v.  *Opinions Subject to Co-Pending Motion to Strike (Dkt. No. 145)*

Defendants argue that Dr. Horn's opinions about the wrinkles limitation of the '541 Patent should be stricken if the Court grants its co-pending motion to strike SKN's contentions. Dkt. No. 145 at 9. The Court denied that motion. Dkt. No. 176 at 1. This portion of the Horn Motion (Dkt. No. 145) is accordingly **DENIED**.

> vi.  *"No Wrinkles" Limitation Opinions (Dkt. No. 270)*

Defendants argue that Dr. Horn's opinions on the "no wrinkles" limitation should be excluded because he fails to apply the Court's construction that the "so as to prevent the generation

of wrinkles" limitation from the '541 Patent means "that a surface . . . has no wrinkles." Dkt. No. 270 at 4. Specifically, Defendants allege that Dr. Horn testified during deposition that the '541 Patent does not prohibit all types of wrinkles. *Id.* at 5. Defendants further allege that Dr. Horn has not opined that any accused foils have no wrinkles prior to use, could not agree that the accused foils have wrinkles, and downplayed the significance of wrinkles in the outer parts of the foils. *Id.* Defendants argue that the opinions Dr. Horn offers—that the accused foils have no wrinkles when used in battery manufacturing—are legally irrelevant because the relevant time for wrinkles is the time of importation or sale, not manufacturing. *Id.* at 6. Relatedly, Defendants ask for exclusion of Dr. Horn's opinions asserting that a customer's certification of the MTS foils satisfies the "no wrinkles" limitation. Dkt. No. 270 at 6–7. Defendants argue such opinions are "entirely speculative" as Dr. Horn has no knowledge that the customer (i) did certify the MTS foils or (ii) requires no wrinkles. *Id.* at 7. Defendants allege the MTS foils are still in development. *Id.*

SKN argues that Dr. Horn expressly applies the Court's claim construction. Dkt. No. 281 at 8. (citing Horn Op. Rep., Dkt. No. 145-1 ¶¶ 252–56). SKN complains that Defendants only challenge Dr. Horn's deposition testimony, not the supplemental opinions in his report. *Id.* SKN agrees that infringement is determined at the time of importation or sale but argues that the Court's construction of "no wrinkles" only applies at the time of infringement—the time of sale. *Id.* at 9. SKN argues that "Dr. Horn's testimony concerning no wrinkles during the coating process is consistent with his overall opinion that there can be no wrinkles as specified by the customer." *Id.* at 11 (citing Horn Sup. Rep., Dkt. No. 270-5 ¶ 49). SKN alleges the customer specification states that "any wrinkle visible to the naked eye" is "not allowed." *Id.* (citing Dkt. No. 281-5 at -988). SKN argues that no exception is made for MTS foil, and Dr. Arnold agrees the specification applies to it. *Id.* at 12 (first citing Dkt. No. 281-5; and then citing Dkt. No. 281-1 at 46:2–20).

Dr. Horn's opinions concerning the "no wrinkles" limitation are not inconsistent with the Court's construction. He incorporates by reference a portion of his opening report, Horn Sup. Rep., Dkt. No. 270-5 ¶ 48, which analyzes infringement "understand[ing] that the Court construed this claim limitation to mean 'such that the copper foil has no wrinkles,'" Horn Op. Rep., Dkt. No. 145-1 ¶ 252–56. While Defendants ask to exclude paragraphs of Dr. Horn's supplemental report, they only argue using inconsistencies in his deposition testimony. Dkt. No. 270 at 4–6. Dr. Horn's opinions are also relevant to whether the accused foils had wrinkles at the time of importation or sale. He testified to there being no wrinkles in the foil during a later coating. Dkt. No. 270-7 at 24:15–25. Coating is after the time of importation or sale. He also testified that "the first 10- or 20-meters of the foil" may have wrinkles "introduced" after delivery and is typically discarded. *Id.* at 58:21–25, 59:17–60:9. Even if that discarded portion had wrinkles, it would not bear on whether the remainder of the foil had wrinkles. So long as the non-discarded portion was not otherwise disturbed, the lack of wrinkles at the time of coating would indicate a lack of wrinkles at the time infringement is determined. Additionally, Dr. Horn's opinions based on the customer specification that "any wrinkle visible to the naked eye" is not allowed, are sufficiently reliable. Therefore, these portions of the Supplemental Horn Motion (Dkt. No. 270) are **DENIED**.

B.  Kindler Motion (Dkt. No. 142)

  i.  *Royalty Base Opinions*

Defendants argue that Ms. Kindler's royalty base opinions are flawed because she relies "on unsupported infringement opinions, as explained in [their] motion seeking exclusion of Dr. Horn's opinions, to assume that all accused products infringe." Dkt. No. 142 at 5–6. Defendants argue that Ms. Kindler has no evidentiary support to assume all accused foils satisfy the asserted claims where Dr. Horn failed to opine on representativeness. *Id.* at 5. Defendants thus argue that

Ms. Horn's royalty base opinions are "legally impermissible" under *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022), and similar cases.

However, each case is materially distinguishable. For example, in *Niazi*, "it was undisputed that not all of those sold devices [that were included in the damages expert's calculations] had been used to practice the claimed method." 30 F.4th at 1357. Many of the claims here are apparatus or composition of matter claims, and SKN maintains that all accused foils included in Ms. Kindler's damages calculations practice such claims. Dkt. No. 224 at 1–2 (citing Kindler Rep., Dkt. No. 185-3 ¶¶ 64–67). Defendants' arguments against Ms. Kindler's damages base rehash their arguments against Dr. Horn's infringement conclusions based on representativeness, Dkt. No. 185 at 1–3, which the Court rejected earlier in this Order. Therefore, the Kindler Motion (Dkt. No. 143) is **DENIED** to the extent it seeks to exclude Ms. Kindler's royalty base opinions.

### ii.  *"Illustrative" Profits Opinions*

Defendants argue that Ms. Kindler's "illustrative" profits analysis should be excluded because she failed to consider the *Panduit* factors. Dkt. No. 142 at 6. Defendants argue that the $8.7 million figure Ms. Kindler arrived at in one of two pricing scenarios only serves to skew the $3.0 million reasonable royalty figure (reflecting 4.0% of revenue) she ultimately opines to under a different method, and makes it appear more reasonable. *Id.* Defendants argue that Ms. Kindler's assumption that SKN would capture 100% of Defendants' sales is incorrect, considering that three other suppliers (Chang Chun, Lotte, and Nippon Denkai) were poised to replace Defendants, and SKN was not certified by Defendants' customer to provide foils during the damages period. *Id.* at 7. Defendants argue that Ms. Kindler also failed to correctly analyze the profits SKN would have made because it incurred negative operating profits (losses) during the damages period, and the "contribution margin" she uses excludes relevant costs including those for materials, processing, selling, and administration. *Id.* at 8. Defendants argue a profit analysis requires apportioning out

the incremental value the patented invention adds, which they allege Ms. Kindler failed to do. Dkt. No. 201 at 3. Defendants argue that Ms. Kindler's analysis "bears little if any relevance" to a reasonable royalty analysis, and carries "a substantial risk of" confusion, and thus should be excluded as in *Genband US LLC v. Metaswitch Networks Corp.*, No. 14-CV-33, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016). *Id.*

SKN argues that Defendants mischaracterize Ms. Kindler's analysis as a lost profits analysis, which it is not because she "does not opine that SKN . . . is entitled to lost profits damages." Dkt. No. 185 at 3. SKN argues that Ms. Kindler's approach is instead an evaluation of what profits SKN would have expected to lose by licensing the patents to Defendants during the hypothetical negotiation, which is properly considered under *Georgia Pacific*. *Id.* at 3–4. SKN argues that the Federal Circuit blessed this approach, without requiring *Panduit* analysis, in *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017). SKN argues that Ms. Kindler noted that the relevant time was November 2020, before either side was certified, and SKN had been in discussions with Defendants' customer. *Id.* SKN alleges Ms. Kindler noted competitors but opined that they would not affect profits because each targeted overlapping customers with SKN. *Id.* at 7 (citing Kindler Rep., Dkt. No. 185-3 ¶¶ 104–35). SKN further alleges Ms. Kindler opined that "the contribution margin is the more appropriate metric." *Id.* at 8 (citing Kindler Rep., Dkt. No. 185-3 ¶ 132).

In *Genband*, this Court held that an expert "may not opine that" the defendant's "alleged infringement has resulted in lost profits." 2016 WL 125503, at *4. Importantly, the expert opined that "lost profits have definitely occurred" and that his reasonable royalty conclusion was "significantly understated" in comparison. *Id.* at *3. The Court's reasoning was based on the

12

Federal Circuit's warning that damages evidence must be "closely tied to the incremental value" added by the patent so as not to "skew the damages horizon" and risk jury confusion. *Id.* at *4.

In *Asetek*, afterwards, the Federal Circuit rejected a defendant's argument that the expert "circumvented the requirement . . . that a patent owner prove it would have made the infringer's sales 'but for' the infringement" under *Panduit*. 852 F.3d at 1362. It explained that a reasonable royalty analysis is distinct from a lost profits one because, under lost profits, "the patent owner is entitled to be made whole . . . without discounting for the rational interests limiting willingness to pay on the infringer's side." *Id.* at 1363. It explained that, during the hypothetical negotiation, "a patent owner . . . would consider the profits on sales it might lose as a result of granting a license," and "would be 'unlikely' to … accept[] a royalty rate" below that loss. *Id.* at 1362. The Federal Circuit noted that the plaintiff's expert merely took "account of all the relevant evidence to the hypothetical negotiation"—in analyzing expected losses without considering inapplicable *Panduit* requirements—which no legal principle barred. *Id.* at 1363.

The present case is materially different from *Genband* in that Ms. Kindler merely opined that her expected profits analysis would put "upward pressure" on the reasonable royalty award at the hypothetical negotiation, before concluding what that award was, and did not opine that "lost profits have definitely occurred." Kindler Rep., Dkt. No. 185-3 ¶ 135, 176(d). Ms. Kindler's opinions are well within the bounds set by the Federal Circuit in *Asetek*—she only accounted for all of the relevant evidence that SKN, as a rational actor, would have evaluated at the hypothetical negotiation, consistent with the *Georgia Pacific* framework, which would have included what SKN could have expected to lose in profits by licensing the patented inventions to Defendants. That she failed to evaluate *Panduit* factors three and four is unpersuasive, considering these factors do not apply to the reasonable royalty analysis, and her assumptions were noted and explained.

Accordingly, the Kindler Motion (Dkt. No. 143) is **DENIED** to the extent it seeks to exclude Ms. Kindler's illustrative profits analysis.

### III.   CONCLUSION

For the reasons and to the extent provided above, the Motions (Dkt. Nos. 145, 270, 142) are **DENIED**.

**SIGNED this 17th day of April, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE